PHILIPENE VASELEOU, Widow, and PHILIPENE VASELEOU, Curatrix of the Estate of JACQUELINE MILLER, a Minor, v. ST. LOUIS REALTY & SECURITIES COMPANY, a Corporation, and ST. LOUIS UNION TRUST COMPANY, a Corporation, Employers, and THE TRAVELERS INSURANCE COMPANY, a Corporation, Insurer, Appellants.—130 S. W. (2d) 538.

Division Two, July 7, 1939.

*Jones, Hocker, Gladney & Grand* and *William G. O'Donnell* for appellants.

*J. C. Hopewell* and *Luke & Cunliff* for respondents.

1124

TIPTON, J.—This is an appeal from the judgment of the Circuit Court of St. Louis County affirming the award of the Missouri Workmen's Compensation Commission in awarding compensation for the death of John H. Miller to his widow and his adopted daughter, Jacqueline Miller. The award was as follows: To the widow, Philipene Vaseleou, the sum of $150 for burial expenses and the sum of $20 a week for 12 1/7 weeks (to the date of her remarriage), and to Philipene Vaseleou, as curatrix of the estate of Jacqueline Miller, a minor, the sum of $20 a week for 372 16/35 weeks.

The principle question for our decision in this case is: Was the deceased an employee of the St. Louis Union Trust Company, or was his relation with that company that of an independent contractor. Both parties to this litigation agree that if the status of Miller was that of an employee, then the compensation should have been awarded, but, on the other hand, if his status was that of an independent contractor, compensation should be denied.

Three witnesses testified for the respondents, the claimant, Philipene Vaseleou, and Robert Jones and Lin D. Ham, employees of the real estate department of the St. Louis Union Trust Company.

The appellants contend that there is no conflict in evidence, and, therefore, that whether the deceased was an independent contractor or an employee is a question of law and not one of fact. We have so held. [Mallory v. Louisiana Pure Ice & Supply Co., 320 Mo. 95, 6 S. W. (2d) 617; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909.] However, the respondents contend that the commissions findings of fact are in the nature of a special verdict and conclusive if supported by any substantial competent evidence. We have ruled thus in Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S. W. (2d) 918, and Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S. W. (2d) 551. We see no distinction between these two principles of law. On a given state of facts, it is a question of law whether the relation of master and servant exists. This is so whether the facts are disputed or not. If the evidence is conflicting, then the facts that

are found to be true by the triers of the facts must, as a matter of law, sustain the relation of employer and employee. Consequently, on a given state of facts it is as question of law whether those facts sustain the relation of master and servant. We will, therefore, examine the evidence and see if it, with all reasonable inferences drawn from it, supports the finding of the commission that the deceased was an employee of the appellants, the St. Louis Union Trust Company.

The St. Louis Union Trust Company, through its real estate department, acts as agent for numerous of its clients in matters concerning the management of their real estate, its duties, among other things, being to make repairs on the property it manages. Among the clients of the Trust Company was the St. Louis Realty and Securities Company, the alleged employer in this case, which owned various pieces of property in and around St. Louis, including property located at 21-25 North Gore Avenue, Webster Groves, Missouri. On March 3, 1937, while the deceased was doing repair work at this property he fell and sustained injuries of which he later died.

The relation between the deceased and the Trust Company began several years before this fatal accident when the Trust Company regularly engaged the services of the Shine Company, then owned by John P. Shine, father-in-law of the deceased, for the purpose of making whatever repairs were required upon the property under its supervision and control. After Shine's death, the deceased bought the construction company from Shine's widow and thereafter operated it. He continued to do the repair work for the Trust Company and for several years prior to his death he did work only for it, that is, he did no repair work for any other person. He worked on an average of three or four days a week and his pay was figured at $10 a day. When the Trust Company had a repair job, the deceased was called and he went with either Jones or Ham to make an estimate of what the repair job would cost, and if his estimate was reasonable he was told to go ahead and do the work. Sometimes his estimate was written and sometimes it was oral, but in figuring the job the Trust Company understood that the deceased allowed himself $10 a day, that he usually had two men helping him. On April 11, 1939, he received injuries while working on a building owned by the Securities Company and received compensation. The defense in that case was that he was an independent contractor but the St. Louis Court of Appeals held that he was an employee. The case, Miller v. St. Louis Realty & Securities Co., is reported in 103 S. W. (2d) 510. After this accident, the Trust Company required Miller to carry compensation insurance and to make a written estimate of the cost of each job. In some instances the estimate was not made until after the job was completed. As we read the record, this was done in order to establish the rate of insurance the Trust Company would have to pay the Travelers Insurance Company. On the Gore Avenue job,

the deceased did not make an estimate of what the job would cost in advance, and after his death his widow was paid $75, which covered the cost of materials and allowed $10 a day for his time.

An "independent contractor" is one who, exercising an independent employment,. contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work. However, if the employer has the right to direct the details of how the job is to be performed or the manner in which the work is to be done, then the status of the one doing the work is that of an employee. And this is true though the employer does not exercise that right. The determination of whether one is an employee or an independent contractor must depend on the facts in the particular case. [Maltz v. Jackoway-Katz Cap Co., supra; Rutherford v. Tobin Quarries, supra.]

There are certain portions of the evidence which, standing alone, would tend to show that the deceased was an independent contractor, but when the evidence is read as a whole, we think the commission correctly ruled that the status of the deceased was that of an employee within the meaning of the Compensation Laws.

Jones testified as follows:

"Q. On this job at 21-25 North Gore Avenue what was the basis of Mr. Miller's pay per day, or what was the basis of his pay? A. By the time and material; the job was one the same basis as everything else, an allowance of $10.00 a day for his brickwork.

"Q. Have you had occasion, that is, during the year previous to March 3, 1937, to send Mr. Miller to more than one building for repair work? A. Yes, sir.

"Q. Have you had occasion during that same period of time to take him off one job and move him to another before he completed his first? A. Yes.

"Q. Under your arrangement with him did you have the right to take him from one job to another if the necessity arose? A. Yes.

"Q. If you had him working on this Gore Avenue property and you wanted to take him and put him on another job before he finished this Gore Avenue job, did you have the right to do that? A. Yes.

"Q. Did you have the right to tell him how to do the work and the work you wanted done on each one of these buildings you had him on? A. Yes, sir.

"Q. When Mr. Miller was out working on 21-25 Gore Avenue, did you have occasion to go by and see how the work was progressing? A. Yes, I did.

"Q. You were checking it from time to time? A. Yes.

' "Q. For the purpose of approving the manner in which he was doing the work? A. That's right.

"Q. While you were out there inspecting this building, had you seen Mr. Miller doing that work, repairing on the fire wall, in a

manner different than you had instructed him, as I understand it, you could have stopped him? A. Yes.

"Q. And you could have directed him to change the method he was doing it and directed him to do it the way you wanted it done? A. Yes.

"Q. Was that true on work he did for you during the past year? A. Yes.

"Q. Irrespective of where the job was or the kind of work he was doing; is that correct? A. That's correct.

"Q. Did you have authority to tell him he had to go out there and tell him he had to go out and do that work? A. Yes.

"Q. At a certain time? A. Yes."

Lin D. Ham's testimony was similar to that of Jones; for example, he testified as follows:

"Q. In telling him what you wanted done, would you specify the manner in which it was to be done? A. Yes."

We think the evidence clearly shows that the Trust Company, through its officers, had the right to direct the details of how the work was to be done and the manner of doing it.

The appellants rely upon the case of Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16. We do not think that case is in point because the city engineer was given supervision of the work solely for the purpose of securing compliance with the specifications provided in the contract. In that case we said: "By no fair construction can the provision authorizing him to direct the mode of doing the work be held to mean that it is his duty to step in between the contractor and his servant, and direct the latter in the details of his operations." In the case at bar, the deceased was required to do the work in the manner directed by the Trust Company. It even had a right to tell him when and where to work and there is no evidence that the deceased had a right to substitute someone else to work in his place.

The case of McKinley v. The Chicago S. F. & C. Ry. Co., 40 Mo. App. 449, is similar to the Salmon case and, therefore, is not in point.

In the case at bar, the deceased was regularly and exclusively employed by the Trust Company; it had the right to discharge him; it had the right to direct the details as to how the work was to be done; and his pay was fixed at $10 a day. Under these circumstances, we think the commission correctly ruled that the deceased was an employee of the Trust Company.

The appellants contend that the probative force of the testimony of Jones and Ham was destroyed by their cross-examinations. For instance, they claim that these two employees were "white collar" employees and that they did not know how to direct the manner of doing the work. We find no such evidence in the record, but the reasonable inference is to the contrary. They were employed by the Trust Company for the purpose of seeing that the property it

managed was kept in proper repair and they had been doing this work for several years.

As we have previously said, there are isolated parts of the evidence on cross-examination which would tend to show that the deceased was an independent contractor, but when we read the evidence as a whole we think there is but one conclusion to be drawn and that is that he was an employee. The evidence brought out on cross-examination did not show that these two witnesses' testimony on direct examination was mere guess work on their part or that it was based on hearsay so as to come within the rule of Scotten v. Met. Life Ins. Co., 336 Mo. 724, 81 S. W. (2d) 313. We do not think their testimony on cross-examination contradicts their evidence on direct examination, but that, rather, on the whole, it is consistent with it. Therefore, it cannot come within the rule stated in the case of Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644. We overrule the appellant's contention that the evidence shows as a matter of law that the deceased was not an employee within the meaning of the Workmen's Compensation Laws of this State.

█ The appellants next contend that there is no substantial evidence to show the average weekly wage of the deceased from which to compute the amount of the award. We do not agree with this contention. His widow testified that she made out the bills when he was injured in 1935, and that they were based on $10 a day for his labor. There had been no change in his working agreement from that time until his death except as to the compensation insurance and the writing of the estimates. Moreover, both Jones and Ham testified that in the estimates they figured he was making $10 a day for himself. It is true the evidence is rather indefinite as to the number of days he worked, but Section 3320, Revised Statutes 1929, provides that if it is the custom to work for a part of the whole number of working days in each year, and the annual earnings are not otherwise determinable, the minimum number of working days shall be figured on a basis of 200 days. This was the basis of the commission's award and in so making this award they correctly followed the law. [Sullins v. Maxwell Construction Co., 86 S. W. (2d) 380.]

Nor do we agree with the appellants that out of the $10 daily wage, the deceased was required to reimburse himself for any "special expense entailed on him by the nature of the employment."

It follows that the judgment of the circuit court affirming the award of the Compensation Commission should be affirmed. It is so ordered. All concur.