Earl **WILLIAMS**, Respondent,

v.

**ANDERSON AIR ACTIVITIES**, Appellant.

No. 7732.

Springfield Court of Appeals.

Missouri.

Dec. 1, 1958.

Riddle & Baker, Veryl L. Riddle, Charles H. Baker, Malden, for appellant.

Briney & Welborn, Bloomfield, for respondent.

RUARK, Judge.

This is an employer's appeal from the judgment of the circuit court reversing the final award of the Industrial Commission, which such final award had denied compensation.

Claimant was an employee who was working in "plumbing and heating" at the Malden Air Base. On the occasion in question he and three others were engaged in installing a large automatic dishwasher. In so doing they had "to make some new tables for the trays to come around on to push them in the dishwasher." This was in a room with dry concrete floor which had a drain in the center and a slope which gave a fall of about three inches to the drain. After the tables were hooked together "we discovered that the center in the corner was too high and we had to take the legs out from under them to cut them off." They were so engaged upon the corner table. This consisted of a top, a small frame, and legs. The top, or drain board, was made of twenty-gauge galvanized steel, from six to eight feet long, three feet wide, with a four-inch rise in front and an eight-inch rise in back. This drain board weighed approximately one hundred twenty to one hundred twenty-five pounds. The drain board was supported by legs of pipe and these legs in turn were joined together by piping so they constituted one unit and had to be removed as such. The weight of this (leg) unit is not shown. Just how the drain

board and legs were joined is rather indefinite, but "the table and the legs the table set on was in a little frame that sets up about like that" (indicating); and "the table set down in a little thing that sets up about like that" (indicating). The legs fitted into "sockets" and in order to remove them it was necessary to take out certain screws and then raise the drain board (we are not sure about the frame) about four inches in order to let the legs come out underneath. Evidently the legs were not on the four corners, but at one end, in the corner of the room, there was an extended section or overhang which allowed sufficient space for a man to get underneath.

In this endeavor the screws which held the legs, in whatever the attachment was, had been removed. One employee stood at the end away from the corner in order to lift. The claimant got underneath the extended section in the corner, where he had the greater part of the weight to lift, "the heavy end," and the other two employees were underneath or at the side of the table in order to work the legs out. Claimant was in a bent-over position lifting with his back. They raised the table a few inches, but "when I first picked it up so they could get this part of the legs out that thing was catching on the table, you see, and they had to pull it out underneath the other legs." As claimant stated in answer to the referee, "The legs was hung. I didn't have it quite high enough so the legs would come out from under" and the top of the assembly had to be lifted higher. In this exigency the claimant put his hands on his knees, rose on his toes, while in this bent-over position, and "you know it was so heavy I didn't realize—it liked a little being high enough to get the legs out and I give a kinda extra surge and when I did I felt something just squash in my back." There was no slip, no fall, and no jerking. The only conflict in the evidence is that claimant says he complained at the time that he had hurt his back; whereas two of those present testified that they didn't recall his complaining about his back until the next day. The medical evidence is that claimant has a herniated intervertebral disc L5, S1.

The referee's award (dated *March 25, 1957*) denied compensation because "the employee's injury did not result from an accident arising out of and in the course of his employment."

The Industrial Commission (*July 30, 1957*) denied compensation because "we find from all the evidence that the employee's condition herein was not the result of an accident on July 18, 1956, arising out of and in the course of his employment with Anderson Air Activities, as alleged; compensation, therefore, must be and the same is hereby denied. Howard v. [St. Louis] Independent Packing Co., [Mo. App.] 260 S.W.2d 844; Crow v. Missouri Implement Tractor Co., [Mo.App.] 301 S. W.2d 423."

After appeal, the circuit court in a decision rendered on the *28th day of April, 1958*, held:

"Now on this day, finding and decision of Industrial Commission reversed because it is not supported by competent and substantial evidence upon the whole record and is contrary to latest ruling decision of Supreme Court. Cause ordered remanded to Industrial Commission."

The questions we have are (a) whether the experience suffered by claimant was an accident within the meaning of the compensation act (Section 287.020, RSMo 1949, V.A.M.S.), and if so (b) whether the ruling of the commission is reversible as a finding based on an erroneous conclusion of law. In this instance the two questions are almost inseparable.

The Howard case, cited in the (July 30, 1957) finding of the commission, was one in which a lugger in a packing plant, en-

gaged in his normal routine, was subjected to unusual strain when an extra-heavy forequarter of beef struck his shoulder with "an unusual force." The St. Louis Court of Appeals said, 260 S.W.2d at loc. cit. 845:

> " * * * the injury itself is not the event but the result which the event produces, so that in a case of the character of the one at bar, where the injury results from *the intentional act of the employee in exerting muscular force in connection with his handling of some inanimate object while performing the incidents of his employment,* there must be some unusual occurrence, such as a slip, or a fall, or an abnormal strain, in order to bring the case within the coverage of the act." (Italics supplied.)

And at loc. cit. 846:

> " * * * the strain could not have been regarded as abnormal in the sense of being accidental unless it had been preceded or accompanied by some unusual occurrence, * * *."

That case held that no compensable accident had occurred.

In the Crow case the claimant was assisting in the adjustment of an elevator of a corn picker, undertook to support one end while the supporting mechanism was adjusted, and the weight came down suddenly but expectedly on claimant's arms. The machine was a new model, was heavier than that to which the claimant was accustomed, and the *amount or extent* of the weight was unexpected. The weight caused an abnormal strain which resulted in the disability. The Springfield Court of Appeals said in substance that the event which causes the accident is the happening or occurrence, in part at least, external to the body itself, and, this being true, a strain, in and of itself, is not an accident. We quoted the Howard case to the effect that a strain could not be regarded as abnormal in the sense of being accidental when not preceded or accompanied *by some un-*usual occurrence. And we said, 301 S.W.2d loc. cit. 428:

> "*If* (as has been suggested) there was on claimant's part any *mental* misunderstanding or miscalculation with respect to the weight thus voluntarily assumed by him in an intended manner and at an anticipated time, such misunderstanding or miscalculation certainly was no more 'a happening or occurrence in part at least external to the body itself' * * * than was the abnormal strain, and could not fairly be said to have constituted an 'unexpected or unforeseen event' within the contemplation of the Missouri cases and Section 287.020(2)."

But when the Crow case reached the Supreme Court (307 S.W.2d 401, decided on November 12, 1957, *after* the award of the commission but before the judgment of the circuit court in this case), our decision was overruled, as was also the decision in Howard v. St. Louis Independent Packing Co. The Supreme Court quoted from State ex rel. United Transports, Inc., v. Blair, 352 Mo. 1091, 180 S.W.2d 737, and stated, 307 S.W.2d loc. cit. 404, "We find that the general rule is that *an abnormal strain causing injury* to workman may be classified as an accident," (emphasis ours) and again at loc. cit. 405 of 307 S.W.2d:

> "However, where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore; be classified as an accident even though not preceded or accompanied by a slip or a fall."

It has been suggested that there is a basis for distinguishing the situation in Crow and Howard from the case at hand because in those two cases the force which caused the strain came from an outside or external source, hence its amount and destructiveness were subject to being unforeseen and unexpected in that the employee

could not definitely ascertain its extent; whereas the force which comes from the bodily (inward) exertions of an employee is something which he alone controls and is not unexpected or unforeseen. We think this avenue is closed by the holding of the Supreme Court in State ex rel. United Transports, Inc., v. Blair (in banc), 352 Mo. 1091, 180 S.W.2d 737. In that case claimant was changing an automobile tire. A lug was obstinate and the usual and ordinary force was insufficient to remove it; so the employee exerted unusual force in an unusual manner, by putting his foot on the pipe and tugging, and thus produced the strain which resulted in the injury. Furthermore, an examination of the cases cited by the Supreme Court in the Crow case, 307 S.W.2d loc. cit. 404–405, reveals that in such cases there was a factual situation where the forces which caused the injury were those which came from internal exertion and not from an external source. And the Supreme Court also specifically overruled Palmer v. Knapp-Monarch Co., Mo. App., 247 S.W.2d 341, 344, and Kendrick v. Sheffield Steel Corp., Mo.App., 166 S.W.2d 590. In one of these cases the employee was pulling upon a piece of iron to dislodge it from being wedged in the rollers. In the other case the employee was lifting a box to get it out of the way of the press where she worked. In both cases it was said that "in cases of this kind where an employee is injured as a result of exertion in lifting or pulling upon some object, there must be some unusual occurrence, such as a slip, or fall, or abnormal strain as a result of an unforeseen event, in order to bring the person injured within the coverage of the Act."

■ Our interpretation of the Crow case, when it is placed alongside the Blair case, is that where an employee suffers an unexpected and abnormal strain (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury

which is not the result of orderly natural causes, the injury is an accident within the meaning of sec. 287.020(2). The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from the physical exertion rather than from sources external to the body.

■ Under the undisputed evidence in this case the claimant was required to get underneath the table extension and lift it with his back. Whether this, in and of itself, was an extraordinary departure from routine we do not have to decide. But when "the legs was hung" and the claimant placed his hands on his knees, rose on his toes, and gave "an extra surge of power" in order to raise the table still higher, the strain could well have been abnormal, and unexpected in the sense that it was more strain than claimant had anticipated, hence could have been an accident within the meaning of sec. 287.020(2).

■ As to whether the award of the commission can be sustained as a determination of factual questions: The general rule is that the reviewing court does not substitute its judgment for that of the commission and such an award is to be set aside only when not supported by substantial evidence or when clearly contrary to the overwhelming weight of the evidence; and that such evidence, including all legitimate inferences, will be viewed in a light most favorable to the award. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Brown v. Anthony Mfg. Co., Mo., 311 S.W.2d 23; Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306. However, decisions of the commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correc-

**66**

·tion. Vaseleou v. St. Louis Realty & Securities Co., 344 Mo. 1121, 130 S.W.2d 538; Gantner v. Fayette Brick & Tile Co., Mo. App., 236 S.W.2d 415; Carlton v. Henwood, 232 Mo.App. 165, 115 S.W.2d 172; Horrell v. Chase Hotel, Inc., Mo.App., 174 S.W.2d 881. And where the finding of ultimate fact is reached by the application of rules of law instead of by a process of natural reasoning from the facts alone, it is a conclusion of law and subject to our reversal. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S.W.2d 130; Holland v. Missouri Electric Power Co., Mo.App., 104 S.W.2d 277, 283; Ashwell v. United States Seed Co., Mo.App., 167 S.W. 2d 950.

In this instance the commission cited the Howard and Crow cases and applied the law as it then appeared to be from these two court of appeals decisions. It is obvious that the commission believed the law to be that an injury received from an abnormal strain which came from the application or exertion of internal force without the intervention or contribution of some unexpected external occurrence could not be classed as an accident. But these two decisions have been upset by the later Supreme Court determination of the law on the questions involved. To leave an award which was apparently based upon the then erroneous interpretation of the law rather than a process of reasoning on the facts alone would be the pursuit of form over substance. In all fairness and justice the commission should make its determination as to whether there was an accident on the facts and in the light of the most recent decisions of the Supreme Court on the question. It follows therefore that the judgment of the circuit court reversing and remanding the case to the commission should be affirmed. It is so ordered.

STONE, P. J., and McDOWELL, J., concur.