**Janet S. KELLEY, Appellant,**

v.

**SOHIO CHEMICAL COMPANY, Respondent.**

No. 23992.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Rope, Shanberg & Rope, Herbert M. Rope, Sherman L. Gibson, Kansas City, for appellant.

Edgar S. Carroll, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

HUNTER, Judge.

Employee-appellant Janet W. Kelley sought Workmen's Compensation benefits from her employer, Sohio Chemical Company, for injuries she suffered at her place of employment during working hours when she was the victim of an unexplained assault by an unknown person. The referee, the Industrial Commission and the circuit court have denied her relief, hence this appeal.

The salient facts are undisputed. Miss Kelley, single and twenty-one years' old, was employed as a stenographer by Sohio Chemical Company and performed general office work in its three-employee office lo-

cated on the 24th floor of the Kansas City Power & Light Building in downtown Kansas City. On January 22, 1962, at 11:45 a.m. she went out to lunch, and returned at 12:30 p.m. All the other offices on the floor were empty and closed at noon as their employees were at lunch. Miss Kelley's office was the only one that always had someone present.

Upon Miss Kelley's return from lunch Mr. Terrell, a fellow employee, left for lunch leaving Miss Kelley alone. The third employee, Mr. Goodnight, was out of town that day. Miss Kelley went to the stock room for something and heard the bell on the elevator ring. The stock room is an inner room which can be entered only through the office. She describes what next occurred: "We have an automatic elevator and when it stops on our floor the bell rings, and I heard somebody walk into the office and walk up behind me and when I didn't hear anybody say anything I started to turn around and then all I remember was somebody hitting me and that was all until I regained consciousness."

When Mr. Terrell returned from lunch at 1:10 p.m. he found Miss Kelley stretched out on the floor, face down and unconscious. She had a lump on the back of her head from something having struck it hard. There were black and blue marks on her right arm which could have been caused by finger prints. There were no heavy objects lying near her. Nothing in the office had been disturbed, tampered with or taken. Mr. Terrell summoned others, and Miss Kelley was taken to the hospital where she remained for a number of days. In view of the disposition of the coverage question which we believe to be required by the above facts, we refrain from any further mention of her injuries.

There was evidence to the effect that the Power & Light Building in question is the usual type of well-kept, downtown office building. It is a well managed building with a man in the lobby supervising the operation of the elevators. No one had noticed any strangers loitering around or in the building.

■■ On review of questions of fact decided by the Industrial Commission, our inquiry, as that of the circuit court, is limited to whether or not the findings of the Commission are supported by competent and substantial evidence upon the whole record. This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could reasonably have made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.

■ Additionally, decisions of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the reviewing court and fall within the court's province of review and correction. Vaseleou v. St. Louis Realty & Securities Co., 344 Mo. 1121, 130 S.W.2d 538, Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61.

Our Workmen's Compensation Law requires an accident to be one "arising out of and in the course of" the employment in order to be compensable. Section 287.120 RSMo.1959, V.A.M.S. These are separate tests and each must be satisfied. Every case must be determined upon its own facts. It is tacitly conceded in the present case that the instant injury arose "in the course of" the employment. But did it arise "out of" the employment? The Industrial Commission ruled it did not.

According to some of the text writers, wilful assaults are divided into three categories; namely, (1) those having some inherent connection with the employment, (2) those that are inherently private, and (3) those that are neither, i. e. are "neutral". The latter classification includes completely unexplained assaults. And, ac-

cording to Larson, Workmen's Compensation, section 11.31, page 146, "The majority of jurisdictions are inclined to regard the neutral category as noncompensable, for want of affirmative proof of distinctive employment risk as the cause of harm * * *." To the same effect, see 58 Am. Jur., Workmen's Compensation, section 265, p. 765; 99 C.J.S. Workmen's Compensation § 227, page 765.

Our supreme court has definitely placed this state in the majority grouping. In Toole v. Bechtel Corporation, Mo., 291 S.W. 2d 874, deceased was assaulted (shot several times) while in the company tool room, of which he was in charge, during the lunch hour. Before he died deceased refused to relate the circumstances of the shooting and the identity of the person who shot him. Other evidence indicated the possibility that it was a fellow employee. It was clear that the shooting had no connection with deceased's work or duties, that the assailant was not trying to steal anything and that deceased was not trying to protect the property.... There was no evidence of a struggle, the man just went "beserk", walked up and shot him and deceased had had no trouble, or argument with him and no business with him on the job. On these facts the supreme court ruled that although the injury arose in the course of the employment it did not arise out of the employment saying, loc. cit. 880, "An injury arises 'out of' the employment when there is a direct causal connection between the injury and the employment; and, even though the precise injury need not have been anticipated, it must have been a rational consequence of some hazard connected with the employment."

In Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, approvingly quoted in the Toole case, supra, 291 S.W.2d loc.cit. 881, the claimant was shot while performing regular work, by another employee who was firing at a third employee in a dispute over a nickel found on the floor. It was held that this injury did not arise "out of" the employment. The court there said, "* *

where the employee is assaulted or shot, not because he is an employee or because of his employment, but for reasons entirely personal and wholly disconnected from his employment, the injury in that event does not arise out of the employment so as to justify the making of an award of compensation. * * * It is true that the employment was responsible for the fact that all three women were together on the premises and subject to the employer's general right of control, but this circumstance is insufficient to show anything more than that the injury was received in the course of the employment."

Also cited with approval in the Toole case is Lardge v. Concrete Products Mfg. Co., Mo., 251 S.W.2d 49, where the Supreme Court held that an injury and death resulting from an assault by a fellow employee upon the deceased while he was working, did not arise "out of" the employment when the cause of the assault was a personal quarrel, and that the assault must be directly related to the work to permit an award of compensation.

In Scherr v. Siding & Roofing Sales Company, Mo.App., 305 S.W.2d 62, a floor covering salesman was struck in the head by a disk from a nearby game table as he was discussing a potential sale with the tavern owner. Declaring that there must be a causal connection before it can be said that an accident arises out of the employment and that the employment must in some way be responsible for the injury, and after noting that the employment did not expose the employee to an unusual risk or injury from such agency which is not shared by the general public, the St. Louis Court of Appeals, stated, loc. cit. 65, "We are committed to the rule that before an injury can be said to arise out of the employment 'it must have been a rational consequence of some hazard connected with the employment'. * * * If the employee relies upon the theory that the accident occurred by reason of his exposure to an unusual risk there must be proof that the risk was unusual."

In Ries v. De Bord Plumbing Co., Mo. App., 186 S.W.2d 488, an employee (plumber) while walking through a hallway of an apartment building where he was working was assaulted by an unknown person for apparently no reason. In denying recovery for lack of a causal connection between the injury and the employment the St. Louis Court of Appeals declared, loc. cit. 489, "In the case at bar respondent was assaulted by an unknown person for apparently no reason whatsoever. The assailant was not connected with the employer's business in any way, nor was he under the employer's control. He may have been an escaped maniac, or he may have mistaken respondent for someone against whom he had a grudge. In either event, no recovery could be had, because it is not shown that an employee working in an apartment house is subject to a greater risk of injury from such persons than are the public generally. There is no causal connection whatever between the injury in the case at bar and the employment. In our opinion, there is not sufficient competent evidence in this record to warrant the finding that respondent's accident arose out of his employment."

In Gregory v. Lewis Sales Company, Mo. App., 348 S.W.2d 743 in speaking of assault cases, the Springfield Court of Appeals noted, loc. cit. 746: "And, in a wide variety of factual situations, our courts have reminded that ' "it is necessary to bear in mind the fundamental difference between those causative agencies which are part and parcel of the master's business and under his control, and those which lie outside that business and beyond his control. In the former class of cases, it is quite reasonable to hold the master liable, no matter how unusual or unpreventable the accident may be. But, in the latter class of cases it seems unjust to hold the employer liable, *unless the employment in some way exposes the employee to an unusual risk or injury from such agency which is not shared by the general public.*' "

In the instant case the evidence before the Industrial Commission supports a finding of an assault unconnected with the employment, and, thus, one which did not arise "out of" the employment as required by the statute in order for it to have been compensable. Section 287.120 RSMo 1959, V.A.M.S. Certainly the commission on this evidence was entitled to conclude that appellant had failed to persuade that her work exposed her to extra hazards above and beyond those of the public generally. See, Williams v. Great Atlantic and Pacific Tea Co., Mo.App., 332 S.W.2d 296(5).

Thus, upon our review of the record, we have concluded that the award of the Industrial Commission was supported by competent and substantial testimony and was not contrary to the overwhelming weight of the evidence.

The judgment of the circuit court affirming the award of the Industrial Commission is affirmed.

All concur.