Henry Franklin FREEMAN,
Employee-Appellant,

v.

Jerry CALLOW, Employer-Respondent,

United States Fidelity & Guaranty
Company, Insurer-Respondent.

No. 9481.

Missouri Court of Appeals,
Springfield District.

June 26, 1975.

Kenneth L. Dement, Sikeston, for employee-appellant.

Blanton, Blanton, Rice & Sickal, Bernard C. Rice, Sikeston, for insurer-respondent.

STONE, Judge.

In this proceeding under the Missouri Workman's Compensation Act, claimant Henry Franklin Freeman seeks benefits on account of personal injuries sustained by him from acid intentionally thrown into his face and eyes by one Lloyd Adams about 3:30 P.M. on Saturday, June 28, 1969, while claimant was on duty at the service station in Sikeston, Missouri, operated by his employer, Jerry Callow d/b/a Uptown Shell Service. Prehearing admissions narrowed the contested issues to whether or not claimant's injury resulted from an "accident arising *out of* and *in the course of* his employment."[1] (All emphasis herein is ours.) The referee in the first instance, and thereafter the Industrial Commission on review, denied benefits because claimant's accident did not arise *"out of* . . . his employment." That was the only issue upon judicial review in the circuit court, where the final award of the Industrial Commission was affirmed, and likewise is the only issue upon this appeal.

■ It may be well at the outset to observe that, although on judicial review the circuit court was in the first instance, and this court is on appeal, authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either court should substitute its own judgment on the evidence for that of the Commission; but that a reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. *Bradshaw v. Richardson Trucks, Inc.,* 467 S.W.2d 945, 947 (Mo. banc 1971); *Brown v. Missouri Lumber Transports, Inc.,* 456 S.W.2d 306, 307 (Mo.1970); *Smith v. Plaster,* 518 S.W.2d 692, 696(1) (Mo.App. 1975). Our statement of facts accords appropriate and required recognition to that basic principle of judicial review in this category of cases. *Selvey v. Robertson,* 468 S.W.2d 212, 214 (Mo.App.1971); *Vandaveer v. Reinhart & Donovan Const. Co.,* 370 S.W.2d 156, 158 (Mo.App.1963).

Claimant Freeman, 25 years of age at the time of accident, had been employed as "assistant manager" of Uptown Shell Service (hereinafter "the station") since October 1968, or for some eight or nine months prior to the accident. He "washed cars [and] serviced them" and, when employer Callow was not there, claimant "was boss." He also was "to brief customers . . . try to catch every car that come in . . . try to build up business, talk to people, meet them."

Mrs. Edna Eaton, whom claimant identified as "a very close niece of mine," came to the station as a customer "about once a week, something like that." During the period immediately preceding the date of accident, Mrs. Eaton, whose husband then in Vietnam was a brother of Mrs. Lloyd (Shirley) Adams, was staying at the Adams home, and the two ladies rode to work together in Mrs. Eaton's automobile. Claimant said that he first met Mrs. Adams some two or three weeks prior to the accident when, on the way to work, Mrs. Eaton stopped at the station for gasoline and he talked to the two ladies as he "vacuumed the car out."

1. § 287.120(1), RSMo 1959, V.A.M.S., as amended by Laws 1965, p. 400, which was the applicable statutory provision on June 28, 1969, the date of accident, read as follows: "1. If both employer and employee have *elected* to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment and shall be released from all other liability therefor whatsoever, whether to the employee or any other person."

In response to an invitation by Mrs. Eaton to "stop over" for the purpose of looking at some pictures which she expected to receive from her husband in Vietnam, claimant went to the Adams home on the evening of Tuesday, June 24, 1969, but then was informed "they didn't get [the pictures] that day." He "was there for about fifteen or twenty minutes talking to them outside." On that occasion he learned that Mr. Adams was employed elsewhere "in the evenings."

Claimant returned to the Adams home the following evening, to wit, on Wednesday, June 25, 1969. The pictures had arrived and, while he sat in the front room looking at them and talking with his niece, he saw Mrs. Adams in the kitchen washing her hair. As he "got started to leave," Mrs. Adams walked into the front room and sat down. In the ensuing conversation they "just talked . . . about different things" but certainly not "about [his] going out with her." Neither trip to the Adams home was in response to an invitation by Mrs. Adams or in any wise pertained to the business of claimant's employer.

Claimant also testified that on another evening, the date of which was not fixed in the record but obviously was prior to the aforementioned calls at the Adams home on June 24 and 25, he was "at my brother's house" and "my niece [Mrs. Eaton] came over there and she [Mrs. Adams] was along."

About 2 P.M. on Thursday, June 26, Mr. Adams confronted claimant at the station. At one point in the transcript we find this pointed, pauciloquent account by claimant as to what occurred at that time: "Well he [Mr. Adams] came up there and accused me of talking to his wife, accused me of kissing her . . .. I told him I haven't, and if he would bring her up we would talk to her, get it straightened out." Subsequently claimant offered this more detailed report: "He [Mr. Adams] asked me if I had been messing around with his wife. I told him no. He said, 'Well, that wasn't what I heard.' He said, 'I heard you been messing around.' I told him, 'You go home and bring her up here and get this thing straightened out.' Well I told him she came in here with my niece. They buy gas here and I talk to them, stuff like that. I know nothing about it. I go on with everybody that way. He said, 'Don't ever speak to her again.' I said, 'Okay, I won't.' So he got in his car and he left. I didn't see him no more until the 28th."

About 3:15 P.M. on Saturday, June 28, Mr. Adams parked his automobile in the alley behind the station and asked claimant to take the spare tire off the wheel in the trunk of his automobile and mount another tire on that wheel. Claimant immediately proceeded to do so, went to the Adams automobile, obtained the wheel on which the spare tire was mounted, and brought it into the station service quarters. As he was changing the tire on that wheel, Mr. Adams stood nearby with what appeared to be a "milkshake carton" in his hand and "every once in a while put it up to his mouth like he was drinking out of it." When the tire change was completed, Mr. Adams paid the $1.00 charge without comment or complaint, and claimant rolled the wheel back to the parked automobile, crawled into the trunk and mounted it in the proper place, then alighted and threw the old tire into the trunk, thanked Mr. Adams, "told him to come back and see us," turned around and started to walk away.

As claimant did so, Mr. Adams called to him, "I want to talk to you." Although nothing had been said about Mrs. Adams that afternoon, claimant testified he knew what Mr. Adams wanted to discuss. Aside from that, it was a busy Saturday afternoon and he was needed to assist in washing an automobile, so he told Mr. Adams that, if he would move his automobile from the alley to an indicated location on the station premises, "I [claimant] would be right back over. He [Mr. Adams] said, 'No, I want to talk to you now.' I said, 'I will be

right back.' He said, 'Turn around and look at me,' so I did." Whereupon, Mr. Adams immediately threw the liquid contents of the "milkshake carton" (identified in the record only as an "acid") into his face and eyes, instantly burning and completely blinding him. With claimant thus rendered helpless, Mr. Adams began to kick and beat him, at the same time repeatedly declaring, "I will kill you." Two men nearby came to claimant's assistance and the assailant "jumped in his car and took off." As a result of this assault, claimant sustained serious injury to his eyes and impairment of vision, the nature and extent of which are not here in issue.

The compensability of injuries resulting from an assault upon a workman has been the subject of appellate judicial rumination and ruling in numerous reported opinions dealing with a wide range of factual situations. The law in this area was well stated and the assault cases were carefully categorized in the opinion of Cottey, Sp. J., in *Liebman v. Colonial Baking Company*, 391 S.W.2d 948, 951–952(5–7) (Mo.App.1965), from which our Supreme Court in *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803 (Mo. banc 1975) recently quoted the following excerpt with approval, as we now do likewise:

"The assault doctrine has been fully developed in Missouri. It is possible to illustrate its scope and method by examples remarkably free of the contradictions that have attended its use in some other jurisdictions. Assaults divide conveniently into three classes. Larson's Workmen's Compensation Law, Sec. 7, p. 48 et seq.; Sec. 11, p. 131 et seq.; *Kelly [Kelley] v. Sohio Chemical Co.*, Mo.App., 383 S.W.2d 146, 147.

"1st: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which, in either event, are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri. Typical examples may be found in *Hacker v. City of Potosi*, Mo., 351 S.W.2d 760, where a policeman was shot while investigating a traffic violation, and in *Macalik v. Planter's Realty Co.*, Mo.App., 144 S.W.2d 158, where a foreman was murdered in retaliation for having fired the assailant's son. [Citing eight additional Mo. cases.]

"2nd: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri. Typical examples may be found in *Lardge v. Concrete Products Mfg. Co.*, Mo., 251 S.W.2d 49, where the employee was struck in retaliation for his charge that the assailant had stolen his wine, and in *Foster v. Aines Farm Dairy Co.*, Mo., 263 S.W.2d 421, where the fatal quarrel was triggered by the participants' community of interest in the victim's wife. See also, *Toole v. Bechtel Corp.*, Mo., 291 S.W.2d 874, and *Staten v. Long-Turner Const. Co.*, Mo.App., 185 S.W.2d 375.

"3rd: Irrational, unexplained or accidental assaults of so-called 'neutral' origin, which, although they occur 'in the course of' the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place. In some jurisdictions that circumstance is regarded as a sufficient reason for awarding compensation; but not in Missouri. Examples may be found in *Ries v. De Bord Plumbing Co.*, Mo.App., 186 S.W.2d 488, where the employee was assaulted at his assigned place of work by a stranger with no apparent motive; in *Kelly [Kelley] v. Sohio Chemical Co., supra*, where the employee was struck down from behind in her of-

fice by an unknown assailant for no discoverable reason; in *May v. Ozark Central Telephone Co., supra* [Mo.App., 272 S.W.2d 845], where, for the sake of the discussion, it was assumed that the employee had been accidentally shot by a hunter while working in a wooded area; in *Long v. Schultz Shoe Co., supra* [Mo. App., 257 S.W.2d 211], where the employee was struck by a stray bullet in the course of a shooting scrape between other employees on the premises; and in *Scherr v. Siding & Roofing Sales Co., supra* [Mo. App., 305 S.W.2d 62], where a salesman calling on a customer at the latter's place of business was hit by an object thrown wildly by another visitor on the premises.

"In every Missouri case involving an assault of 'neutral' origin compensation has been denied. The rationale in each, insofar as it is pertinent to the issue before us, has been that the risk of unprovoked assault is no more logically attributable to one man's employment than to another's unemployment, and that the mere fact that the employment provided a convenient opportunity for the assault to take place, as by bringing the victim and his assailant together at the point where it occurred, is insufficient to establish any causal connection between the employment and the injury, or to show that the latter was a rational consequence of the former." [2]

■ As we have noted, the sole issue here is whether or not claimant's injury arose "out of" his employment. One of the frequently repeated definitive statements concerning "out of" the employment is that an injury so arises when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. See *Heaton v. Ferrell*, 325 S.W.2d 800, 803–804 (Mo.App. 1959), and the numerous cases there collected in note 1. Several cases include the alternative statement that "an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not foreseen or anticipated" [*Gregory v. Lewis Sales Co.*, 348 S.W.2d 743, 745 (Mo. App.1961), and cases there cited]; but all of these cases and many others also embody the indispensable requirement that, *to arise out of the employment, an injury must have been a rational consequence of some hazard connected therewith.* *Person v. Scullin Steel Co., supra*, 523 S.W.2d at 805; *Kelley v. Sohio Chemical Co.*, 392 S.W.2d 255, 257(4) (Mo.1965); *Toole v. Bechtel Corp.*, 291 S.W.2d 874, 880(3) (Mo.1956); *Lathrop v. Tobin-Hamilton Shoe Manufacturing Co.*, 402 S.W.2d 16, 21 (Mo.App.1966); *Scherr v. Siding & Roofing Sales Co.*, 305 S.W.2d 62, 65(6) (Mo.App.1957). Of course, whether or not this requirement has been satisfied is to be determined upon the facts of each case and not by application of a formula. *Foster v. Aines Farm Dairy Co.*, 263 S.W.2d 421, 423(4) (Mo.1954).

■ In denying compensation in the instant case, the Industrial Commission found "that [claimant's] injuries were sustained by accident in the course of his employment but that said accident was not an outgrowth of frictions generated by the service station work; that [claimant's] injuries did not arise out of his employment but were sustained in the course of a private quarrel and purely personal to the participants. *Lardge v. Concrete Products Mfg. Co.*, 251 S.W.2d 49 [Mo.1952], and in *Foster*

2. The applicable statutory provision on June 28, 1969, the date of claimant's accident, as heretofore quoted in note 1, was amended Laws 1969, p. 390 [H.B. 367 effective October 13, 1969], by addition of the following sentence at the end of the otherwise unchanged text of § 287.120(1): "The term 'accident' as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." In *Person*, the Supreme Court held that thereby assaults in the *third* category outlined in *Liebman*, i. e., those of *neutral* origin, became compensable but *not* those in the *second* category, i. e., those committed in the course of private quarrels that are purely personal to the participants.

*v. Aines Farm Dairy Co.*, 263 S.W.2d 421 [Mo.1953], where the fatal quarrel was triggered by the participants' community of interests in the victim's wife. We find that although there was no community of interest in Lloyd Adams' wife, Adams thought the employee was interested in his (Adam's) wife and unfortunately it triggered a tragic result."

Thus, the findings of the Commission definitely placed Adams' assault upon claimant in the second category delineated in *Liebman*, i. e., those committed in the course of private quarrels purely personal to the participants, and accordingly the Commission denied compensation for resulting injury as has been done consistently in this category of cases, not only in Missouri [*Person v. Scullin Steel Co., supra; Foster v. Aines Farm Dairy Co., supra; Lardge v. Concrete Products Mfg. Co., supra*], but also in other jurisdictions.[3]

The statutory injunction that the Workmen's Compensation Law "shall be liberally construed with a view to the public welfare" [§ 287.800, RSMo 1959, V.A.M.S., as amended Laws 1965, p. 397], of which claimant's counsel reminds us, neither impinges upon the function and right of the Industrial Commission, as trier of the facts, to draw from the evidence such inferences and findings as may be fairly and reasonably permissible [*Johnson v. Simpson Oil Co.*, 394 S.W.2d 91, 98(14) (Mo.App.1965); *Gregory v. Lewis Sales Co., supra*, 348 S.W.2d at 747–748(6)] nor authorizes allowance of a claim lacking an essential element required by law. *Finerson v. Century Electric Co.*, 227 S.W.2d 740, 745(6) (Mo.1950); *Mershon v. Missouri Public Service Corp.*, 359 Mo.

257, 221 S.W.2d 165, 167(1) (1949); *Selvey v. Robertson, supra*, 468 S.W.2d at 216(5); *Hogue v. Wurdack*, 298 S.W.2d 492, 500(20) (Mo.App.1957); *Long v. Schultz Shoe Co.*, 257 S.W.2d 211, 214(6) (Mo.App.1953).

Without reraking and resifting the facts, we record our conclusion that, upon the record before us, the Industrial Commission reasonably could have found, as it did, that claimant's accident and resulting injuries did not arise *out of* his employment, and that accordingly the judgment of the circuit court affirming the final award of the Commission denying compensation should be and is here affirmed.

BILLINGS, C. J., and HOGAN and TITUS, JJ., concur.

FLANIGAN, J., not participating.

---

3. E. g., *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350 (1972) (male grocery store employee and female coemployee killed in store by her jealous husband); *Belden Hotel Co. v. Industrial Commission*, 44 Ill.2d 253, 255 N.E.2d 439 (1970) (male hotel employee killed in hotel by jealous husband of hotel maid); *Graham v. Graham*, Okl., 390 P.2d 892 (1964) (male cafe employee and female coemployee killed in cafe by her jealous husband); *Wood v. Aetna Casualty & Sure-* *ty Co.*, 116 Ga.App. 284, 157 S.E.2d 60 (1967) (male supermarket employee killed in store by jealous husband of former female supermarket coemployee); *City of Prestonsburg v. Gray*, Ky., 341 S.W.2d 257 (1960) (fire chief in his quarters at fire station killed by disgruntled displaced fire chief); *Liberty Mutual Ins. Co. v. Upton*, Tex.Civ. App., 492 S.W.2d 623 (1973) (saleslady on duty in dry goods store killed by ex-husband).