**David O. BURGESS, Claimant/Appellant,**

v.

**NACOM CABLE COMPANY,
Employer/Respondent.**

No. 68907.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 16, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 22, 1996.

Application to Transfer Denied
June 25, 1996.

Joseph A. Rathert, Fenton, for appellant.

Cornelius L. McGrath, St. Louis, James P. Mannion, Jr., David S. Slavkin, St. Louis, for respondent.

PUDLOWSKI, Judge.

This is an appeal from a plurality decision of the Labor and Industrial Relations Commission reversing an ALJ's Workers' Com-

pensation award. The parties are David Burgess (claimant) and NaCom Cable Company, a Division of Amerilink Corporation, employer (NaCom). The ALJ found that claimant was an employee. Claimant claims the Commission erred in finding he was an independent contractor and, therefore, not entitled to Workers' Compensation. We reverse.

The facts of the case are undisputed. NaCom is in the business of cable television installation and repair. At the time of the accident NaCom had an arrangement with TCI to install cable lines in the St. Louis Metropolitan Area. NaCom claims it only employs office workers, supervisors and administrators. The actual installation functions are performed by persons who agree by a contract to work as independent contractors. Prospective installers are not required to have prior experience or training. They accompany an experienced installer for an indeterminable time, a few days to a few weeks, before receiving their own assignments. During training, installers are paid by the training installer. For the first two weeks after training NaCom and TCI employees examine the prospective installer's work for compliance with their instructions. After acceptance, each one is required to wear a uniform shirt with a logo denoting "cable T.V." and an identification tag. The uniform shirt is purchased from NaCom. They are required to rent a two-way radio from NaCom and carry it with them during working hours.

NaCom scheduled installations by asking each installer how many hours they would like to work and in which zip code area. Work packets are assembled in conjunction with TCI and designated for a specific area. Each installer reports to NaCom's office at 7 a.m. They may perform the assignments in any order they choose within a four hour window. The installers are paid by the job. If a given installation does not function properly the consumer contacts NaCom or TCI. The installer is responsible for correcting the installation and is not compensated for the return visit. If the installer does not correct the problem, another installer will repair the problem and NaCom deducts the cost of repair from the original installer and credits the subsequent installer.

The installers are required to report by two-way radio to the NaCom office at 10 a.m., 2 p.m. and after each job is completed. The installers are obligated to return to NaCom at the end of the day and remit any cash receipts and the work vouchers. Each installer must have his own truck and claimant had a NaCom sign on it while working. Installers are required to supply their own tools. If they do not have the special tools installers may purchase them from any source or NaCom and NaCom will provide financing. The costs of the expensive specialty tools are repaid through a weekly 25% deduction of the installer's compensation if purchased from NaCom. The contract provides that the installer will be furnished all necessary materials and all unused materials will be returned to TCI who had given the installer the materials with the packets. NaCom also assesses a $10.00 handling fee each week for any outstanding obligation owed. The company retains a security interest in the installer's vehicles and tools until the indebtedness is paid.

Installers are paid by the completed assignment. The pay structure is established by NaCom and the installers do not negotiate their remuneration for the various assignments. Each installer is mandated to carry insurance to cover NaCom and himself for work related incidents. The policy must be acceptable to NaCom. NaCom, according to the contract, has the authority to purchase insurance for the installer and deduct the cost from the installer's pay. NaCom and the installers have the right to terminate the relationship on 24 hours notice for breach of contract and on 14 days notice for any other reason. The contract also provides a waiver of any lien by the installer who has worked on any property.

In November, claimant was injured on an assignment and filed a Workers' Compensation Claim. NaCom denied claimant was an employee but was an independent contractor and, therefore, not eligible for Workers' Compensation. The ALJ rejected NaCom's contention and found claimant was an employee and made an award.

The Commission by a plurality decision reversed the ALJ and determined that the claimant was an independent contractor relying on the principle that NaCom did not control the claimant citing *Hutchison v. St. Louis Altenheim,* 858 S.W.2d 304 (Mo.App. E.D.1993). Claimant appeals the Commission's decision.

■■■ Administrative agency decisions based on the agency's interpretation of law are matters for the independent judgment of the reviewing court. *King v. Laclede Gas Co.,* 648 S.W.2d 113, 114 (Mo. banc 1983); *Mo. Div. of Emp. Sec. v. Labor & Industrial Relations Commission,* 637 S.W.2d 315 (Mo. App.1982). The determination that one is an "employee" involves a question of law no less than does the determination that one has suffered an "accident." *Saxton v. St. Louis Stair Company,* 410 S.W.2d 369, 375 (Mo. App.1966). Further, the rule which has been many times stated and which is controlling in this case is that decisions of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of fact, are not binding upon us and fall within our province of review and correction. *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 296–97 (Mo.1965); *Williams v. Anderson Air Activities,* 319 S.W.2d 61, 65 (Mo.App.1958). The finding that the claimant was not an "employee" of NaCom clearly represented an application of the law, as distinguished from a finding of fact and hence, is subject to correction by this court. *Miller v. Hirschbach Motor Lines, Inc.,* 714 S.W.2d 652, 654 (Mo.App.1986).

An employee under the Workers' Compensation Act is defined as "every person in the service of any employer ... under any contract of hire, express or implied...." Section 287.020.1, RSMo 1986.

The Supreme Court, in construing this provision of the Act, has given it a broad meaning and has held that ·it should be so construed that any doubt presented in any case should be resolved in favor of the employee being covered by the Act. *Howard v. Winebrenner,* 499 S.W.2d 389, 395 (Mo.1973).

In *Hutchison* this court reiterated the factors cited in *Howard, Id.,* in determining if the employer had control of the employee. Those factors asserted in *Hutchison* are: 1) extent of control; 2) the actual exercise of control; 3) the duration of employment; 4) the right to discharge; 5) the method of payment; 6) the degree to which the alleged employer furnishes the equipment; 7) the extent to which the work is the regular business of the employer; and 8) the employment contract. No one factor is dispositive, but each is relevant to the issue. *Id.* The plurality opinion cited *Hutchison* and the contract and concluded that the claimant was not controlled by NaCom and, therefore, claimant was not an employee.

On September 22, 1993, Burgess entered into a "Welcome and Understanding Memorandum" (contract) with NaCom. The contract designated Burgess as an independent contractor and specified the aforementioned activities which he would be subject to. The term "independent contractor" is not defined by our Workers' Compensation statute. However, our Supreme Court has given a judicial definition:

> An 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work.

*Vaseleou v. St. Louis Realty & Securities Co.,* 344 Mo. 1121, 1126, 130 S.W.2d 538, 539 (1939). Decisions hold without exception that whether the work status is that of employee or independent contractor depends on the facts in a particular case. *Rutherford v. Tobin Quarries,* 336 Mo. 1171, 1177, 82 S.W.2d 918, 921 (1935).

We observed that while the independent contractor designation of the work status of a person is not to be brushed aside or ignored, it is not conclusive when there is evidence to overcome that designation. *Miller* at 656.

■■■ NaCom argues that the contract relieves it of accountability as an employer because the agreement eliminated any control by it over Burgess and since the concept of control determines an employer—employee relationship it is not accountable to Burgess. The plurality commission opinion ac-

cepted the argument and cited *Hutchison* as authority to determine that NaCom did not control Burgess and, therefore, NaCom was not an employer.

■ Ordinarily control determines the employer-employee relationship, however, there are circumstances when such concept is not applicable. The definitive and analytical opinion in *Ceradsky v. Mid–America Dairymen, Inc.,* 583 S.W.2d 193,[1] distinguishes the relevance of control to the service of the worker to the employer. It asserts at p. 196:

> Where the evidence shows that a person to whom a service is rendered has a right to control the performance of the person who renders the service, the relationship of employer and employee is essentially established. *Tokash v. General Baking Company,* 349 Mo. 767, 163 S.W.2d 554, 55[6] (1942). That is the sense of subsection (1) of the Restatement [of the law of Agency Second] § 220. Where the evidence lacks such a conclusiveness, however, whether the one who renders the service for the other acts as employee or independent contractor depends upon all the circumstances of the work relationship—so that control becomes only one indicium weighted with the several others to determine the true status. That is the sense of subsection (2) of the Restatement § 220. Larson, op. cit., supra, § 43.10; Lawrence v. William Gebhardt, Jr., & Son, supra, l.c. 102[1].

> The factors to consider under the nature of the work test include: the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job. *Gaston* at 74.

We apply the "relative nature of the work test" to the following undisputed facts and conclude as a matter of law that Burgess was an employee of NaCom for Workers' Compensation purposes.

1. NaCom at once supplied the *tools,* financed the purchase, and withheld the installment payments from compensation checks. The benefit here is NaCom's avoidance of equipment expenditures for work which is essentially unskilled and cannot be compared to traditional trades in which individual tool ownership is expected, if not preferred by the worker.

2. NaCom provided Claimant herein the *insurance* indirectly and financed the premiums through withholdings from Burgess' compensation checks. Particular note is taken of the language of Section 287.290 RSMo which is relevant.

> No part of the cost of such insurance shall be assessed against, collected from or paid by any employee.

3. It cannot be said *picture name badges* are commonplace among independent residential service providers. Rather, it seems more likely that such a badge renders a comfort level to the TCI consumer who observes the badge and the truck with a NaCom sign appear for the service call. Since these consumer customers belong to TCI it cannot be said to be a benefit to the installer but simply an additional uniform requirement of NaCom. This requirement could certainly be considered a control requisite.

4. Independent contractors generally find their own work rather than pick up *daily assignments.*

5. Claimant *did not bid or otherwise offer a price* for given service functions or given customer locations as might an independent contractor. The benefit to NaCom of avoiding overtime costs and additional labor costs for corrective work is obvious. Also, it may also be said that the skill level and payment by flat rates for services is inconsistent with the status of an independent contractor and entirely consistent with primarily new work or installations typical of the industry rather than primarily maintenance work or custom jobs that might sustain an independent contractor.

---

1. *See* also, *Gaston v. J.H. Ware Trucking,* 849 S.W.2d 70 (Mo.App.W.D.1993).

6. Periodic communication by *radio dispatch* throughout the day is a clear emblem of control and scheduling benefit to NaCom. No benefit inures to Claimant by updating NaCom by radio throughout the day and being reachable for additional assignments.

7. NaCom would have no *business purpose* if the work of the installers did not occur.

8. The *skill level* of the installer is not particularly high, generally, especially since the techniques can be learned in less than three days and no later than thirty days.

9. Finally, parties cannot contract their *legal status under Chapter 287*. Given the level of control exerted by NaCom and the withholdings from compensation, it appears the labeling of these positions as "independent contractor" is exactly the situation sought to be prevented by Section 287.040 RSMo, and related case law.[2]

We also note that NaCom's contract required the "subcontractor" to pay "all federal, state and local taxes, including income and withholding tax, social security, unemployment compensation, workers' compensation, sales, property and gross receipts taxes and levies imposed upon employer or self-employed persons on the work and skill indemnity and hold NaCom harmless." It seems that such an onerous arrangement flies directly into conflict with the purpose of the Workers' Compensation Law. The Workers' Compensation Act was established to regulate business, not individuals. *West v. Posten Const. Co.*, 804 S.W.2d 743, 746 (Mo. banc 1991).

We observed that generally the case law identifies factors or "indicia" of employment and does not afford consideration of possible underlying purposes of each but, more simply, the above factors and conclusions represent traditional practices self-evident of the familiar employer-employee relationship.

We believe that Burgess was an employee engaged in work covered by the Workers' Compensation Act. We decline to permit the reality of that status be obscured by illusory formalities attending the installers agreement.

As a final matter, NaCom asserts that the status of the installers was decided in the federal court and that decision bears consideration by this court. *Dole v. Amerilink Corporation*, 729 F.Supp. 73 (E.D.Mo.1990). We have reviewed the opinion which addresses, among other matters, the designation of the installers according to the Fair Labor Standards Act, a Federal Enactment, and find it to be instructive as to Federal law but not persuasive as to our state Workers' Compensation Law.

The decision of the Commission is reversed and the case is remanded with instructions that the award by the ALJ be reinstated.

SIMON, J., concurs.

AHRENS, P.J., dissents.

AHRENS, Presiding Judge, dissenting.

I respectfully dissent. I believe the Commission's award is supported by competent and substantial evidence of the whole record, and the Commission properly found that under the eight factor "right to control" test, claimant was an independent contractor and not an employee of defendant at the time of his injury. *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304 (Mo.App.1993). I would affirm the award of the Commission.

---

2. In our research we have espied the recent trend of some corporate enterprises eluding the public policy pertaining to the Workers' Compensation Law by evasively avoiding their liability by secreting themselves behind the facade of "independent contractor status" so that they may avoid the costs of an injury to a worker who was injured in the usual course of the enterprise's business. Such activity is not within the spirit of the law.

The essence of the law is to place on industry the burden of bearing the loss resulting from injuries sustained by workers which arise out of their employment instead of the workers and their dependents bearing such loss alone. *Beatty v. Chandeysson Elec. Corp.*, 238 Mo.App. 868, 190 S.W.2d 648, 654 (1946).