Charlene SCHEPER, by Clayton SCHEPER, Employee/Appellant,

v.

HAIR REPAIR, LTD., Employer,

and

American Family Mutual Insurance Company, Insurer, Respondents.

No. 59169.

Missouri Court of Appeals, Eastern District, Southern Division.

Sept. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1991.

Case Transferred to Supreme Court Dec. 17, 1991.

Case Retransferred to the Court of Appeals March 24, 1992.

Original Opinion Reinstated April 3, 1992.

Maurice B. Graham, Daniel P. Fall, Schnapp, Graham, Reid & Fulton, Fredericktown, for appellant.

James B. Kennedy, Evans & Dixon, St. Louis, for respondent.

AHRENS, Judge.

Claimant employee, Charlene Scheper, by her guardian and conservator, appeals from a final award of the Labor and Industrial Relations Commission (Commission) denying her workers' compensation benefits. Claimant sustained injuries in an automobile accident after she was assaulted and abducted by a former boyfriend. An Administrative Law Judge (ALJ) found claimant's injuries were not in the course of and did not arise out of her employment with Hair Repair, Ltd.; the Commission upheld the ALJ's decision. We affirm.

The evidence reveals that on September 17, 1984, the date of injury, claimant was employed as a hair stylist for Hair Repair, Ltd., an employer operating under and subject to the provisions of the Missouri Workers' Compensation Act. Prior to the date of injury, claimant had been involved in a stormy relationship with one Patrick Harrison; claimant had attempted to end the relationship several months earlier, but Harrison wanted the relationship to continue.

On July 22, 1984, claimant filed a complaint with the Cape Girardeau Police Department, alleging that Harrison assaulted her and stole her keys and purse. Two days later, Harrison forced his way into an apartment located above Hair Repair, Ltd., and began choking claimant. Claimant left with Harrison after he stated he would kill her if she didn't. Driving at a high rate of speed, Harrison stated that if he couldn't have claimant, no one could. Harrison went to his residence and held claimant for nine hours against her will, releasing her only when she convinced him to seek help at a mental health facility. As a result of the incident, Harrison was charged with trespassing, false imprisonment, and two counts of assault. Harrison was released on bond and ordered not to contact claimant or her family. On September 10, 1984,

Harrison pled guilty to the assault charges; he was scheduled for sentencing on October 22, 1984.

Early in the evening on September 17, 1984, Harrison went to his fraternity house in search of a firearm. Extremely agitated, Harrison stated, "Someone is fucking with me and I'm going to fuck right back." Unable to locate a gun, Harrison took a butcher knife from the kitchen and left in a borrowed car, driving at a high rate of speed. At approximately 7:00 p.m., Harrison went to claimant's apartment, stating that he wanted to talk to claimant. Present were claimant, her sister, and Tim Brooks, who was claimant's boyfriend at the time. Harrison spoke with claimant but left when claimant's parents arrived. During the conversation, Harrison told claimant he was going to hurt her, and that if he couldn't have her, no one could.

Claimant, Brooks, and claimant's sister left the apartment to attend an employee meeting at Hair Repair, Ltd. concerning an upcoming fashion show sponsored by the salon. Shortly after the salon closed at 8:00 p.m., Harrison entered through the back door. Harrison attempted to speak with claimant; when she refused to talk with him, Harrison tried to force her to leave the building with him. Brooks and Tim Roth, a customer scheduled to emcee the salon's fashion show, attempted to overpower Harrison. The three men scuffled, and Harrison stabbed Brooks in the leg. At some point before or during the struggle, Harrison told claimant that if he couldn't have her, no one could, and that he would kill her. After the stabbing, Harrison forced claimant at knifepoint to leave the building; he then forced her into the car he had earlier borrowed from his fraternity brother, and drove away from the salon.

Police attempted to stop Harrison's vehicle, but Harrison eluded them. Travelling at a speed in excess of 90 miles per hour, Harrison's vehicle crossed a traffic median and proceeded northbound in the southbound lane toward a line of traffic led by a garbage truck; officers observed that

Harrison had his arm around claimant's neck. Harrison jerked the steering wheel in the direction of the oncoming truck, and the two vehicles collided head-on. Harrison was killed, and claimant suffered massive injuries.

Claimant, by her guardian and conservator, filed a claim for workers' compensation benefits. The parties stipulated that claimant is permanently and totally disabled. At the hearing on the claim, the ALJ denied compensation, finding that claimant's injuries did not arise out of and were not in the course of her employment at Hair Repair, Ltd., since they were unrelated to claimant's employment and were not attributable to a "neutral" assault predicated on an unexplained happening. The Commission upheld the ALJ's order.

The sole issue on appeal is whether the Commission erred in affirming the ALJ's decision to deny claimant benefits. Appellate review of this case is limited to a determination of whether the Commission's decision is supported by competent and substantial evidence, upon review of the entire record and consideration of the evidence in a light most favorable to the award. *Dillon v. General Motors*, 784 S.W.2d 915, 916 (Mo.App.1990); § 287.495.-1(4) RSMo 1986.

■ Every employer subject to Missouri's workers' compensation statute is strictly liable to furnish compensation for the personal injury or death of an employee resulting from an "accident arising out of and in the course of his employment." § 287.120.1 RSMo (Supp.1990). An "accident" that arises out of and in the course of employment includes but is not limited to "injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." *Id.*

■ Missouri recognizes three types of assaults: (1) those invited by the dangerous nature of the employee's duties or environment, or resulting from some risk directly attributable to the employment; (2) those "committed in the course of private quarrels that are purely personal to the participants"; and (3) "[i]rrational, unexplained or accidental assaults of so-called "neutral" origin, which, although they occur 'in the course of' the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place." *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803–04 (Mo. banc 1975). Only injuries resulting from assaults committed in the course of private quarrels are not compensable under § 287.-120. *Id.; Olivio v. TLI, Inc.*, 731 S.W.2d 395, 397 (Mo.App.1987).

■ Under the workers' compensation statute, a compensable accident must both "arise out of" and be "in the course of" claimant's employment. § 287.120.1 RSMo (Supp.1990). The terms "arising out of" and "in the course of" are separate tests, and both must be satisfied in order for the accident to be compensable. *Zahn v. Associated Dry Goods Corp.*, 655 S.W.2d 769, 772 (Mo.App.1983). If an employee "in the course of" employment is the victim of a "neutral" assault, then as a matter of law the assault is deemed to have "arisen out of" the employment. *Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874, 878–79 (Mo.App.1975).

Claimant contends the Commission erred in upholding the ALJ's ruling that the assault was not "neutral." Claimant argues that the assault was unprovoked; that prior to the assault she and Harrison were not "quarreling," since she was simply trying to do her job; and that the assault was "irrational," unforeseen, and without reason or motivation. The evidence belies claimant's contentions.

■ While it is true that claimant did not provoke the assault, an employee is not in every instance entitled to compensation under § 287.120.1 simply because the employee did not provoke his attacker. *Person*, 523 S.W.2d at 805. Here, claimant was the tragic victim of her former boyfriend's violent pattern of conduct and animosity; her contention that she was not "quarrelling" with Harrison is simply not supported by the record. As detailed earlier, claimant and Harrison had a violent personal history marked by Harrison's ob-

session with claimant. He had assaulted her twice before and made repeated threats to her life. To say that Harrison and claimant were on "friendly terms" prior to the assault is to disregard the evidence. *See Crofts v. Harrison*, 772 S.W.2d 901, 903 (Mo.App.1989). Evidence that an assailant and his victim knew one another or had prior disputes is a factor indicating the assault arose from a private quarrel. *See Dillard v. City of St. Louis*, 685 S.W.2d 918, 923 (Mo.App.1984).

Similarly, evidence demonstrating a personal motive for an assault favors its categorization as a noncompensable private quarrel rather than a compensable "neutral" assault. *See Olivio*, 731 S.W.2d at 397 (lack of evidence evincing a personal motive for assault compels conclusion that attack properly falls within the "neutral" assault category). The assault on claimant was not a random act of violence. Rather, it was a repetition of prior assaults motivated by Harrison's jealousy and rage. Harrison stated, "If I can't have you, no one can" when he first abducted claimant less than two months before the assault at issue here; he repeated the threat in his conversation with claimant roughly an hour before the assault, and again repeated it during the assault itself. The evidence clearly evinces a personal motive for Harrison's actions. The assault was a foreseeable outgrowth of the initial confrontation an hour earlier; claimant merely imported her private life to the scene of the assault.

While we are mindful of the statutory injunction that the Workers' Compensation Act be "liberally construed with a view to the public welfare," § 287.800 RSMo 1986, that rule of construction does not authorize allowance of a claim that lacks an essential element required by the law. *Freeman v. Callow*, 525 S.W.2d 371, 376 (Mo.App.1975). Since claimant's injuries did not result from a "neutral" assault, they did not in this case "arise out of" her employment with Hair Repair, Ltd. We find competent and substantial evidence to support the Commission's decision to deny claimant benefits.

Judgment affirmed.

CRIST, J., concurs.

CRANDALL, C.J., dissents in separate opinion.

CRANDALL, Judge, dissenting.

I dissent.

Charlene Scheper is permanently and totally disabled because of the unprovoked, violent acts of her assailant. Section 287.120.1 by specific language provides for compensation.

Certainly, the prior relationship between the assailant and victim is a factor to be considered, but it is not decisive. This was not a private lover's quarrel; Ms. Scheper had done everything she could do to distance herself from her assailant. The acts of her deranged assailant were of such a bizarre nature as to be irrational and unexplained. She did nothing to cause or provoke this tragic accident and is entitled to compensation.

I would reverse the decision of the Commission with direction to award benefits.