Jason A. INMAN and Jennifer
Inman, Appellants,

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY and City of
Monett, Respondents.

Nos. SD 30633, SD 30823.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 2011.

Motion for Rehearing or Rehearing En Banc and
Transfer to Supreme Court Denied
July 21, 2011.

Application for Transfer Denied
Oct. 4, 2011.

Cordelia F. Herrin, Cassville, MO, for Appellants.

Stanley N. Wilkins, Kansas City, MO, for Respondent St. Paul Fire & Marine Ins. Co.

Karl W. Blanchard, Jr., Joplin, MO, for Respondent City of Monett.

WILLIAM W. FRANCIS, JR., Judge.

Jason and Jennifer Inman ("the Inmans")[1] appeal the judgment of the trial court sustaining St. Paul Fire & Marine Insurance Company's ("St. Paul") motion

for summary judgment. We affirm the judgment of the trial court.

**Facts and Procedural History**

Because this case is the culmination of two separate lawsuits, an explanation of the underlying lawsuit is necessary in understanding the claims now before this Court. In reviewing the facts, we have utilized the statements of uncontroverted facts filed by each party with their respective motions for summary judgment.[2]

On November 24, 2003, the residents of Valley View Estates ("Valley View"), an annexed neighborhood in Monett, Missouri, filed a petition with the City of Monett (the "City") for a neighborhood improvement district ("NID"), pursuant to sections 67.453–67.475.[3] The residents of Valley View petitioned for improvements to resolve a recurring flooding problem in the neighborhood. The petition included paving streets and adding two-foot curbs, gutters, storm drains, and street lights. The Valley View neighborhood made up the entire NID and consisted of approximately three blocks of forty-eight homes and lots.

On February 20, 2004, the Inmans purchased a home in Valley View. On March 3, 2004, the City clerk mailed the Inmans a notice of a hearing set for March 15, 2004, at which time objections to the opposed NID project would be heard. At the conclusion of the public hearing, the City counsel passed Ordinance No. 7394 approving the NID for Valley View, and the improvements which were proposed. The

1. When referring to the Inmans individually, Jason Inman will be referred to as "Jason" and Jennifer Inman as "Jennifer" for ease of clarity. No disrespect is intended by the use of the Inmans' first names.

2. The Inmans raise as one of their points that the trial court erred in denying their third motion for summary judgment as it is so

intertwined with St. Paul's motion for summary judgment that review is appropriate here. As a result, we look to both motions and both statements of uncontroverted facts to assemble the facts recited here.

3. All references to statutes are to RSMo 2000, unless otherwise indicated.

City began the NID improvements on May 24, 2004.

On August 27, 2004, the City intentionally entered upon the Inmans' property to take a portion of the property for reconstructing a drainage ditch for the public purpose of controlling storm water drainage. The Inmans did not suffer any direct, forcible personal injuries at the hands of the City on that day. When the Inmans came home from work that day, they found the City had dug some soil from the ditch in their backyard.

A "100–year" rainfall occurred on August 28, 2004, and flowed over the top of the streets surrounding the Inmans' home. The rain flooded the Inmans' property and the surrounding properties. As a result, the City concluded putting concrete blocks only on the sides of the ditch as planned would not effectively prevent flooding; the ditch's floor had to be concreted to properly control massive amounts of storm water.

The next work done on the Inmans' property was September 1, 2004. Jason arrived home and saw that the City had begun pouring concrete to form the floor of the expanded storm drain. Jason ordered the City to stop pouring concrete on the floor of the ditch and the City complied.

Subsequently, an attorney representing the Inmans began negotiations with the City for payment of the public-use taking of the Inmans' land needed to allow the City to complete the storm drain improvements, pursuant to the NID. No settlement was reached. The City proceeded through a condemnation action to obtain that portion of the Inman property used for the storm water drain. On October 20, 2004, the City passed Ordinance No. 7479 relating to the Inman property, which declared said construction and maintenance of a drainage easement is "necessary and for a public purpose...."

On December 6, 2004, the City filed a condemnation lawsuit. On January 5, 2005, the Inmans filed a motion to dismiss that lawsuit.

On March 27, 2005, the Inmans and the City reached an agreement entitled, "Memorandum of Understanding" ("Memorandum"), which stated: (1) the construction of a water drainage system at or near the Inman property was necessary and was for the public purpose; (2) the Inmans consented to the City completing the concreting of the drainage ditch; (3) the Inmans reserved the right to pursue any action they might have against the City out of or relating to the partial or total taking of the property for the water drainage system; (4) the Inmans agreed they would not consider any further actions by the City as constituting trespass; and (5) the Inmans reserved their right to sue the City for the two days of trespass they believed the City had committed on August 27, 2004 and September 1, 2004.

On July 12, 2005, the City passed Ordinance No. 7576 declaring that the Valley View NID improvement projects had been completed. On July 15, 2005, the City filed a motion to dismiss the condemnation suit, without prejudice. On July 15, 2005, the Inmans also filed their "counterclaims" which included claims for "Trespass/Inverse Condemnation" and "Suit for Compensatory Damages." On September 12, 2005, without ruling on the condemnation value, or on the Inmans' counterclaims, the trial court dismissed the entire condemnation lawsuit without prejudice.

On September 9, 2005, the Inmans filed a new petition in Lawrence County alleging identical claims to their counterclaims filed in the condemnation suit. The petition included the specific allegation that the taking of the Inman property was for public use. The City filed an answer on November 17, 2005, admitting that the tak-

ing of the Inman property was for public use and purpose.

On October 6, 2005, the City contacted St. Paul and provided the Inmans' original petition seeking damages for trespass/inverse condemnation and compensatory damages. This was the only petition provided to St. Paul before a November 1, 2006 trial. Kelly Rahmeier ("Rahmeier"), the adjuster for St. Paul handling the claim against the City, reviewed the entire insurance policy ("the policy") held by the City. On October 18, 2005, via email, Rahmeier notified the City's attorney, John Woodard ("Woodard"), that the language of the public-use-of-property exclusions in both the General Liability and Management Liability sections of the policy package applied to the Inmans' lawsuit. Woodard believed Rahmeier was fair and reasonable in her denial of the insurance coverage. In his conversations with Rahmeier, Woodard never mentioned anything about the NID ordinance, which was passed to make improvements to the existing storm drains in Valley View; the Memorandum that resolved the condemnation lawsuit; the counterclaims filed by the Inmans in the condemnation lawsuit; or the Inmans' consent—in the Memorandum—to the completion of the entire brick-walled, concrete-floor ditch. Rahmeier specifically asked Woodard if there was a signed settlement agreement, and he denied one existed. St. Paul did not receive notice of the Memorandum until November 15, 2007, when discovery was ordered to be produced in this equitable garnishment case. On October 31, 2005, Rahmeier sent St. Paul's official denial letter to the City denying coverage and defense due to the public-use-of-property exclusions and the injury or damage exclusions in the policy.

St. Paul heard nothing further from the City until ten months later when Rahmeier received an August 11, 2006 letter from Woodard asking St. Paul to review its coverage decision. That letter also mentioned the Inmans were likely to amend their original petition, and the City promised it would immediately forward any amended petition to St. Paul. The correspondence also informed St. Paul this matter would go to trial under the original petition sometime between August 11, 2006 and November 1, 2006, but did not identify a specific trial date.

On October 9, 2006, St. Paul responded to the City that absent any new information, its denial of the claims would remain the same. Woodard admitted he spoke with the Inmans' counsel about the fact there was no coverage unless the public-use allegations were removed from the claims. Woodard also admitted he was trying to bring the claims under the coverage of the policy so that St. Paul would be forced to provide a defense and the City would not have to pay to defend against the Inmans' lawsuit.

On October 25, 2006, the City entered into a section 537.065 agreement entitled "Compromise Agreement" with the Inmans in which the parties agreed, among other things, that the Inmans would not execute any judgment received by them against the City, the City would not appeal any judgment against it, and the City would not seek to continue the trial date past November 1, 2006.

On October 27, 2006, the Inmans mailed to the City a motion for leave to file a first amended petition, along with a copy of the first amended petition. Woodard knew about the first amended petition on October 29, 2006. The City had St. Paul's fax number and email address, as well as Rahmeier's direct phone number. The next day, Woodard sent a letter, via certified mail, to Rahmeier explaining for the first time that the trial was scheduled for November 1, 2006, the Inmans had filed a

motion for leave to amend the petition, and that he believed the Inmans' motion for leave would likely be granted because the Inmans were not changing their theories of recovery. The Inmans' motion for leave to file the first amended petition was filed that same day. Rahmeier received this letter from Woodard, at the earliest, on the evening of November 1, 2006, after the trial was already completed.

On November 1, 2006, without the knowledge of St. Paul or Rahmeier, the City and the Inmans appeared in the Circuit Court of Stone County for hearing on the Inmans' motion for leave to file the first amended petition. The Inmans represented to the court that the first amended petition did not assert any new claims or change any allegations other than those necessary to clarify the elements of their constitutional violations claimed due to a recent Supreme Court ruling that had just been handed down. Contrary to these representations, the first amended petition contained numerous significant changes from the original petition, including the removal of any language about a public-use taking through inverse condemnation, and adding the allegation that the City was on the Inmans' property to simply improve it. Woodard has subsequently admitted that the first amended petition contained substantial differences in facts and claims from the original petition. The trial court sustained the motion for leave, the first amended petition was filed, the City filed an answer to it, and a bench trial was held.

During the underlying bench trial, Woodard offered no evidence, witnesses or exhibits, and did not challenge the foundation, amount or method of determining any of the damages, either emotional or property, to which the Inmans' testified. Judgment in the amount of $451,097.50 was awarded to the Inmans.

On February 9, 2007, the Inmans provided St. Paul with a copy of the first amended petition upon which the bench trial was actually held. On February 16, 2007, the Inmans filed this equitable garnishment action seeking to collect the full judgment from St. Paul.

Over the three years this case was pending in circuit court, three judges presided over the case. There was also protracted discovery, and multiple motions for summary judgment filed, which resulted in the extensive 1,817–page legal file.

On October 13, 2009, St. Paul filed a motion for summary judgment. On November 10, 2009, Judge Charles Curless was assigned to the case. The Inmans' counsel requested and received an extension until December 14, 2009, to file a response to St. Paul's motion. On December 11, 2009, the Inmans filed a motion to stay the proceedings on St. Paul's motion for summary judgment until the Inmans' third motion for summary judgment was decided, submitting that the issues were virtually identical. On February 16, 2010, the Inmans filed a "Request for Ruling on Request for Stay and Motion for Leave to File Response if Request for Stay is Denied."

On February 24, 2010, Judge Curless conducted a hearing. Judge Curless overruled the Inmans' motion to stay or in the alternative motion to file response out of time and the Inmans' motion for summary judgment; he sustained St. Paul's motion for summary judgment. On April 13, 2010, written orders setting forth these rulings were entered. This appeal followed.

### Issues on Appeal

The Inmans raise four points on appeal. First, the Inmans contend the trial court abused its discretion in denying the motion for leave to file response out of time to St. Paul's motion for summary judgment in that a request for an extension of time was implicit in the motion to stay, the Inmans'

actions demonstrated excusable neglect, and the case history included numerous extensions for all parties. Next, the Inmans claim the trial court erred in denying the Inmans' third motion for summary judgment because they are entitled to judgment as a matter of law. The Inmans' third point relied on alleges error in granting St. Paul's motion for summary judgment because it failed to show the Inmans' claims were not covered under the policy. Finally, the Inmans contend the trial court erred in granting St. Paul's motion for summary judgment because the motion was not ripe for ruling in that under Local Rule 2.4.2 [4] of the 39th Judicial Circuit, the Inmans' response was not due until ten days after the trial court denied the Inmans' motion for stay.

For clarity, we begin our analysis by addressing both the Inmans' points regarding the timeliness of their response to St. Paul's motion for summary judgment, and then address the Inmans' points regarding whether St. Paul or the Inmans were entitled to judgment as a matter of law. The issues pertinent to our resolution of this appeal are:

1. Did the trial court abuse its discretion in denying the Inmans' motion for leave to file a response out of time to St. Paul's motion for summary judgment?

2. After the trial court's ruling, did Local Rule 2.4.2 provide the Inmans with an additional ten days to file their response to St. Paul's motion for summary judgment?

3. Was St. Paul entitled to summary judgment because it proved the injury alleged by the Inmans was excluded under the policy?

4. This rule was renumbered as 2.4.2, effective on February 28, 2010; however, there were no changes in the wording.

### No Error in Denying the Inmans Leave to File an Untimely Response

First, we determine whether the trial court abused its discretion in denying the Inmans leave to file a response out of time to St. Paul's motion for summary judgment.

### Standard of Review

We review the trial court's ruling denying the Inmans leave to file a response out of time for abuse of discretion. *See Manor Square, Inc. v. Heartthrob of Kansas City, Inc.,* 854 S.W.2d 38, 42 (Mo.App. W.D.1993). A trial court's discretion is abused when its " 'ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Johnson v. McCullough,* 306 S.W.3d 551, 555 (Mo. banc 2010) (quoting *Wingate by Carlisle v. Lester E. Cox Med. Ctr.,* 853 S.W.2d 912, 917 (Mo. banc 1993)). "Further, if reasonable persons may differ as to the propriety of an action taken by the trial court, then it cannot be held that the trial court has abused its discretion." *State ex rel. Wyeth v. Grady,* 262 S.W.3d 216, 219 (Mo. banc 2008).

### Analysis

Rule 74.04(c)(2) [5] provides in part:

(2) *Responses to Motions for Summary Judgment.* Within 30 days after a motion for summary judgment is served, the adverse party shall serve a response on all parties. . . .

. . . .

A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's state-

5. All rule references are to Missouri Court Rules (2010).

ment is an admission of the truth of that numbered paragraph.

However, pursuant to Rule 44.01(b), "the court for cause shown may at any time in its discretion" extend the length of such a time period "with or without motion" if a request is made before the specified response period has expired, and "upon notice and motion made after the expiration of the specified period ... where the failure to act was the result of excusable neglect[.]" Notably, Rule 44.01(b) imposes notice and motion requirements, as well as a showing of excusable neglect when the prescribed period has already expired. *Allison v. Tyson*, 123 S.W.3d 196, 204–05 (Mo.App. W.D.2003).

■ The Inmans first contend that a request for an extension of time was implicit in their December 11, 2009 motion to stay any further action on St. Paul's motion for summary judgment and, thus, Judge Curless at that point had discretion to enlarge the time for filing the response as it was made before the expiration of the previously extended response period. We do not find the Inmans' motion to stay was a request for an extension of time as required by Rule 44.01. Although this date falls before the previously extended December 14, 2009 deadline for the Inmans' to file their response, in order for the trial court to exercise its discretion under Rule 44.01, a "request" must have been made for an extension of time; here, no such request was made. During oral argument, the Inmans' attorney conceded that this Court cannot condemn the trial court for the denial of something not explicitly requested.

The Inmans also allege that their January 16, 2010 motion for leave to file response, demonstrated excusable neglect in that the Inmans' counsel reasonably believed that a request for an extension of the filing date was implicit in the motion to stay. Because this extension was sought after the specified time period had run, the Inmans must also show that the "failure to act was the result of excusable neglect; ..." Rule 44.01(b).

"Excusable neglect" is not defined in Rule 44.01(b). However, several cases have relied heavily on the definition from BLACK'S LAW DICTIONARY. *See, e.g., Burleson v. Fleming*, 58 S.W.3d 599, 605 (Mo. App. W.D.2001). Black's Law Dictionary defines excusable neglect as:

> A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.

608, 1061 (8th ed.2004). "Excusable neglect" is an action attributable to mishap and not the result of indifference or deliberate disregard. 15 Michael D. Murray, MISSOURI PRACTICE: CIVIL RULES PRACTICE § 44.01–2 (2010 ed).

Here, it was reasonable for the trial court to conclude the Inmans failed to demonstrate excusable neglect, pursuant to Rule 44.01. In the Inmans' motion, there is no explanation offered as to the Inmans' failure to timely file their response. In fact, the only reference to their request states: "[The Inmans] are prepared to immediately file their response to St. Paul's Motion for Summary Judgment, in the event the Court does not grant their request for a stay." Furthermore, a review of the February 24, 2010 hearing also does not reveal any evidence of excusable neglect. At one point the Inmans' counsel explains:

> I have a response virtually completed to their summary judgment. I could file it

now, but the only reason I hadn't filed it was I was wanting to come here and maybe hear what you thought the issues were and maybe I could craft it in a way that was more responsive to your concern. It's ready to go. It has been ready to go. Since we were having a status conference, I was waiting to know how you saw the issues and find the issues.

Because the record does not unequivocally demonstrate the failure of Inmans' counsel to act was the result of excusable neglect, the trial court's ruling is not clearly against the logic of the circumstances then before the court. Accordingly, the trial court did not abuse its discretion in denying the Inmans' motion for leave to file a response out of time to St. Paul's motion for summary judgment. The Inmans' first point is denied.

### St. Paul's Motion for Summary Judgment Ripe for Ruling

Next, we determine whether Local Rule 2.4.2 provided the Inmans with an additional ten days to file their response to St. Paul's motion for summary judgment, rendering St. Paul's motion for summary judgment not ripe for the trial court's ruling.

### Standard of Review

■ This Court independently reviews the trial court's application of a local rule, as it involves a question of law. *See Dunn v. Security Financial Advisors, Inc.,* 151 S.W.3d 140, 143 (Mo.App. W.D.2004).

### Analysis

■ The Inmans allege their response was not due until ten days after the trial court denied their motion for stay because Local Rule 2.4.2 provides a separate time

frame in which the Inmans' response may be filed.[6] Local Rule 2.4.2 states:

> All motions to dismiss, to strike, for production, for inspection of premises, objections to interrogatories, *et cetera,* shall be summarily overruled unless said motions are accompanied by suggestions. Counsel shall plead within ten (10) days as specified by Supreme Court Rule 55.25(c).

The Inmans specifically argue the inclusion of the term *"et cetera"* in Local Rule 2.4.2 expands the application of Rule 55.25(c) to include the Inmans' motion to stay. The Inmans' argument is misguided.

■ A local rule must be interpreted according to the plain and ordinary meaning of the words used. *Dunn,* 151 S.W.3d at 143. Here, Local Rule 2.4.2 unambiguously directs us to Rule 55.25(c) for specifics on when a motion alters the time frame for filing a responsive pleading. Rule 55.25(c) provides, in pertinent part:

> The filing of *any motion provided for in Rule 55.27* alters the time fixed for filing any required responsive pleadings as follows, unless a different time is fixed by order of the court: If the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be filed within ten days after notice of the court's action[.]

(Emphasis added).

Contrary to the Inmans' argument, the term *"et cetera"* included in Local Rule 2.4.2 is in regard to the actions the court shall take when motions are not accompanied by suggestions; it does not alter the response time for the motion for summary judgment. In giving Local Rule 2.4.2 its plain and ordinary meaning, it instructs the court to apply Rule 55.25(c) without

6. Rule 50.01 permits trial courts to "make rules governing the administration of judicial business if the rules are not inconsistent with the rules of this Court, the Constitution or statutory law in force."

any indication its application should be expanded to a motion to stay. The Inmans conceded that ordinarily Rule 55.25(c) "limits this ten day responsive pleading rule to Rule 55.27 motion[s]" and "a 'motion to stay' is not listed specifically in Rule 55.27, . . ." This is precisely the plain and ordinary meaning which Local Rule 2.4.2 directs the court to apply. Interpreting Local Rule 2.4.2 as the Inmans urge would result in a clear inconsistency with the rules of our Supreme Court, the Constitution and statutory law. This is prohibited. *See State ex rel. Burns v. Gillis*, 102 S.W.3d 66, 70 (Mo.App. W.D. 2003); Rule 50.01.

Therefore, the trial court's denial of the Inmans' motion to stay did not enlarge the Inmans' time to file a response to St. Paul's motion for summary judgment under Rule 55.25 or Local Rule 2.4.2, and St. Paul's motion for summary judgment was ripe for the trial court's ruling. Point denied.

### No Error in Granting St. Paul's Motion for Summary Judgment

Next, we address the Inmans' third point relied on alleging the trial court erred in granting St. Paul's motion for summary judgment because St. Paul did not show it was entitled to judgment as a matter of law in that the record fails as a matter of law to show that the Inmans' claims are not covered under the policy. Specifically, we determine whether St. Paul showed the injury alleged by the Inmans was not covered under the policy because of the City's failure to provide notice of the first amended petition, or because the injuries fell under the public-use-of-property exclusions in the policy. We note that during oral argument, the Inmans' attorney admitted that the trial court had all the information necessary to review both motions for summary judgment.

### Standard of Review

Appellate review of a grant of summary judgment is *de novo*. *Kinnaman–Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). When the moving party is the defendant, summary judgment can be established by showing one of the following:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

"The Court reviews the record in the light most favorable to the party against whom summary judgment was entered." *Kinnaman–Carson*, 283 S.W.3d at 764. "'The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.'" *Id.* (quoting *ITT Commercial Fin.*, 854 S.W.2d at 376). Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *ITT Commercial Fin.*, 854 S.W.2d at 377.

## Analysis

■ To prevail on an equitable garnishment action, the plaintiff must prove: (1) the injury is covered by the policy; (2) they have obtained a valid judgment; and (3) the policy was in effect when the incident occurred. *Wilson v. Traders Ins. Co.*, 98 S.W.3d 608, 612 (Mo.App. S.D. 2003). Here, St. Paul's motion for summary judgment negates the first element and, thus, the trial court's grant of summary judgment was appropriate.

■ First, summary judgment was appropriate because the Inmans failed to provide St. Paul adequate notice that the claims were changed in the first amended petition, which prejudiced St. Paul. Because the Inmans failed to file a timely response to St. Paul's summary judgment motion, the facts set forth in St. Paul's motion are deemed admitted. *See* Rule 74.04. St. Paul's statement of uncontroverted facts and supporting documents included facts showing St. Paul was not provided with the first amended petition until after the trial was over. St. Paul's motion for summary judgment also included the following facts:

20. On August 11, 2006, the City's attorney promised to notify St. Paul "immediately" of any new pleadings.

. . . .

23. The Plaintiff's Motion to Amend was granted on the day of the trial, November 1, 2006.

. . . .

25. The First Amended Petition added new claims for violations of the 1st, 4th, and 7th Amendments of the United States Constitution.

26. The First Amended Petition included different factual allegations from the original Petition.

. . . .

28. The City's own attorney, John Woodard, admits that the First Amended Petition contained substantial differences in facts and claims from the original Petition.

In comparing the original petition with the first amended petition, it is obvious the amended petition added new factual allegations, changed other facts, and added a new surprise theory of recovery. Namely, the original petition was based on factual allegations that what occurred was a public-use taking: "[The City] entered onto the Inman Property for the purpose of converting a portion of the Inman Property into a drainage ditch for the public purpose of controlling storm water drainage." The Inmans also admitted this fact in the Memorandum they signed with the City. Coverage for this action was explicitly excluded under the policy. The first amended petition, however, changed the entire nature of the case by alleging a non-public-use taking: "[The City] entered onto the Inman Property for the purpose of converting a portion of the Inman Property into a drainage ditch in the belief that it would improve the Inman Property by controlling storm water drainage." Woodard admitted the changes were an attempt to bring the claims under the policy so that St. Paul would be forced to defend. He further admitted under oath that the first amended petition contained "substantial" differences from the original petition even though he and the Inmans' counsel represented to the trial court, just prior to trial, that there were no new claims in the first amended petition. This was specifically identified in St. Paul's statement of uncontroverted facts, which were also admitted by the Inmans. Thus, the record supports the first amended petition presented a new cause of action.

■ The cooperation provisions in the policy required the City to provide notice and copies of "all legal documents" "as soon as possible" and required cooperation

and assistance in securing and giving evidence, attending hearings and trials, and obtaining the attendance of witnesses. Despite the fact that St. Paul had declined to defend the original petition, St. Paul was still entitled to determine if recovery upon the new allegations would be covered and to have the opportunity to defend upon that theory. *See Rocha v. Metro. Prop. & Cas. Ins. Co.*, 14 S.W.3d 242, 246 (Mo.App. W.D.2000) (coverage voided due to insured's failure to notify insurer of amended petition and entry into a section 537 agreement).

> Where an insured is served with an amended petition setting out a new cause of action, the insurer has the right to determine whether the new count is within its coverage and to reexamine its decision on whether to actively participate in a defense against that new claim. The insured's violation of a cooperation clause relieves the insurer of liability to the insured.

*Id.* at 246–47. Furthermore, " '[t]he law is clear that an insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy....' " *Id.* at 246 (quoting *Dickman Aviation Services, Inc. v. U.S. Fire Ins. Co.*, 809 S.W.2d 149, 153 (Mo. App. S.D.1991)).

It is undisputed the City knew about the amended petition prior to trial, but did not ensure St. Paul received notice or a copy of the amended petition until after the trial was complete. "In an action to recover on an insurance policy, an insured must prove either that he complied with the policy provisions that require performance on his part or that he has an acceptable excuse for non-performance." *Rocha*, 14 S.W.3d at 246. The City offers no indication of any excuse in this case for the failure to notify St. Paul of the first amended petition.

Nevertheless, an insured, or one standing in the shoes of an insured, will not be barred from recovery based on the breach of these conditions unless the insurer can show that it has been prejudiced by the insured's non-compliance with such policy provisions. *Johnston v. Sweany*, 68 S.W.3d 398, 402 (Mo. banc 2002). Here, St. Paul was prejudiced because the City's failure to notify St. Paul of the first amended petition denied St. Paul the opportunity to protect its interests. Specifically, it denied St. Paul the opportunity to investigate the new allegations and claims, to defend against liability at trial, and to dispute the amount of damages. The City failed to give St. Paul the opportunity to defend the new cause of action by failing to notify it of the amended petition. "Because the failure to notify [St. Paul] was unexcused, it gives rise to the presumption that [St. Paul] was prejudiced." *Rocha*, 14 S.W.3d at 248. In such a case, "the insurer will generally be disadvantaged in its capacity to compromise and settle the claim. Such a disadvantage is difficult to prove, and it would be unjust to force the insurer to demonstrate prejudice in such a case." *Id.*

Nevertheless, even if the City's notification of the first amended petition were adequate, the Inmans' claim also fails because the injury is not covered by the policy. It is specifically excluded under the public-use-of-property exclusions contained in both the General Liability and Management Liability sections of the policy.

We note that insurance policies are designed to provide protection and will be liberally interpreted to grant, rather than deny, coverage; however, when an insurance policy is unambiguous, it will be enforced as written. *Poage v. State Farm*

*Fire & Cas. Co.,* 203 S.W.3d 781, 783 (Mo. App. S.D.2006).

Under the policy, there is no coverage, no duty to defend, and no liability to the Inmans if the Inmans' injuries or damages resulted from:

- any method or proceeding used in the taking or controlling of private property for public use; or

- the diminution in value, or inverse condemnation, of property that's caused by the taking or controlling of private property for public use.

The policy explains that *"Method or proceeding* includes condemnation, adverse possession, and dedication by adverse use."

Here, the Inmans argue this exclusion does not bar coverage because the City's intention or purpose for entering upon the Inmans' property was irrelevant as the trial court awarded damages for trespass. We are not persuaded by this argument. It was undisputed that the City decided to take the Inmans' property for the public purpose of improving the storm drainage in the Valley View neighborhood, pursuant to the NID. The policy specifically enunciates that particular types of takings are included; this, however, does not limit the original exclusion applicable to any "method or proceeding." Trespass is included under this exclusion if it is used in the "taking or controlling of private property for public use" as it was in this case. Additionally, under Count II (Suit for Compensatory Damages) of the first amended petition, the Inmans were awarded damages for violation of "42 U.S.C. 1983" which also resulted from the same incident—the taking of the Inmans' property for a public use of improving the water drainage in the neighborhood. Therefore, all the losses, injuries, and damages alleged in the first amended petition "resulted from" the public-use taking and are excluded under the public-use-of-property exclusions.

St. Paul showed the injury alleged by the Inmans was not covered under the policy because: (1) the City failed in its duty to notify St. Paul; and (2) the injury was excluded under the policy terms for public use of property. Accordingly, the trial court's grant of summary judgment was appropriate. The Inmans' point is denied.

## No Error in Denying the Inmans' Motion for Summary Judgment

The Inmans also claim the trial court erred in denying their third motion for summary judgment because all elements of equitable garnishment have been met by the Inmans and at least one element of each of St. Paul's affirmative defenses fail. Because our findings as to the Inmans' third point relied on renders this point moot, we need not address it. Point denied.

In conclusion, the judgment of the trial court is affirmed.

RAHMEYER, P.J., and BATES, J., Concur.