**William Joseph FLOWERS and Carolyn Jeannine Waddell Flowers, Plaintiffs–Appellants,**

v.

**CITY OF CAMPBELL, Missouri and William "Buck" Riley, Defendants,**

**and**

**Dolgencorp, Inc., d/b/a Dollar General Stores, and Billie Gage, Defendants–Respondents.**

**No. SD 31440.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 2012.

W. Thomas Norrid, Springfield, MO, for Appellants.

Jeffrey A. Mullins, Lenexa, KS, for Respondent.

JEFFREY W. BATES, J.

William and Carolyn Flowers (Plaintiffs) brought a wrongful death action against Dolgencorp, Inc. d/b/a Dollar General Stores (Dollar General), Billie Gage (Gage) and other defendants to recover damages for the death of Plaintiffs' daughter, Kasi Flowers (Kasi). An affirmative defense in Dollar General's answer asserted that Plaintiffs' exclusive remedy against Dollar General was a worker's compensation

claim. *See* § 287.120.2.[1] Gage's answer alleged that Plaintiffs' amended petition failed to state a cause of action against Gage because she owed no legal duty to Kasi. Gage and Dollar General later filed motions for summary judgment, which the trial court sustained.

On appeal, Plaintiffs contend: (1) the trial court erred in granting Dollar General's motion for summary judgment because the material facts contained in its motion failed to establish the exclusive remedy defense; (2) the trial court abused its discretion in denying Plaintiffs' request for an extension of time to file a response to Dollar General's motion for summary judgment; and (3) the trial court abused its discretion in denying Plaintiffs' request for an extension of time to file a response to Gage's motion for summary judgment. We reverse the judgment in favor of Dollar General and remand that portion of the case for further proceedings consistent with this opinion. The judgment in Gage's favor is affirmed.

■ Plaintiffs' wrongful death claim arose out of the following undisputed facts.[2] Plaintiffs were the parents of 18–year–old Kasi. In August 2006, Kasi was employed at the Dollar General store in Campbell, Missouri. She had been working at that store as a cashier for several months. She had a boyfriend named Billy Meadows (Meadows).

On August 12th, Kasi arrived at work at approximately 11:30 a.m. The assistant store manager, Rose Payne (Payne), observed that Kasi was crying and upset, and she had a black eye. Kasi said that she had been physically assaulted by her boyfriend, Meadows, during the evening of August 11th. He ripped Kasi's shirt and slapped her around. Payne told Kasi to go to the store's office to calm down. At 1:22 p.m., Meadows entered the Dollar General store. Kasi, who was still in the office, locked the door when she saw Meadows enter. Meadows beat and kicked on the office door until he knocked it open. He was screaming at Kasi and trying to push the office door open to get to her. Payne intervened and convinced Meadows to leave the store. He was upset when he left.

Payne called the Campbell Police Department and reported the incident. Payne also telephoned Gage, a manager at a Dollar General Store in Kennett, Missouri, and informed her of the incident. Around 2:30 p.m., Payne left the store and went to the Campbell police station. She filled out an "Affidavit of Complaint" describing the incident between Kasi and Meadows.

Later that afternoon, Campbell Police Officer William Riley (Officer Riley) arrived at the store and interviewed Kasi about the incident. Through another source, Officer Riley had learned that Meadows also had physically assaulted Kasi on the evening of August 11th. Officer Riley found Meadows and took him into custody.

For reasons not explained by this record, Meadows was no longer in custody at 6:45 p.m. on August 12th. Kasi was still at work when Meadows entered the store

---

1. All references to statutes are to RSMo Cum. Supp. (2005) unless otherwise indicated. All references to rules are to Missouri Court Rules (2012).

2. Dollar General and Gage agreed that the facts set out in Plaintiffs' brief were generally accurate and sufficient for purposes of appeal. A statement of fact asserted in one party's brief and conceded to be true in the opposing party's brief may be considered as though it appears in the record. *Rogers v. Hester ex rel. Mills*, 334 S.W.3d 528, 541 (Mo.App.2010); *In re Nitsche*, 46 S.W.3d 682, 684 (Mo.App.2001).

with a rifle. He shot Kasi, mortally wounding her. Meadows then killed himself.

In May 2008, Plaintiffs filed a wrongful death action against Dollar General, the City of Campbell and Officer Riley. In August 2009, Plaintiffs filed a first amended petition adding Gage as an additional defendant. Plaintiffs asserted a wrongful death claim against Dollar General and Gage in Counts V and VI, respectively, of the first amended petition. In Dollar General's answer, it asserted the affirmative defense that Plaintiffs' wrongful death claim against Dollar General was barred by the exclusive remedy provision in § 287.120.2. Gage's answer alleged that Plaintiffs' amended petition failed to state a cause of action against Gage because she owed no legal duty to Kasi.

In March 2011, Dollar General and Gage filed separate motions for summary judgment. In May 2011, the trial court entered orders that granted the motions. The court's June 2011 judgment in favor of Dollar General and Gage expressly determined, pursuant to Rule 74.01(b), that there was no just reason for delaying the finality of those adjudications. This appeal by Plaintiffs followed. Additional facts will be disclosed as necessary to address Plaintiffs' three points on appeal.

### Point I

Plaintiffs' first point challenges the trial court's decision to grant Dollar General's motion for summary judgment. A summary judgment can only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Hitchcock v. New Prime, Inc.*, 202 S.W.3d 697, 699 (Mo.App.2006); *Lindsay v. Mazzio's Corp.*, 136 S.W.3d 915, 919 (Mo.App. 2004). Appellate review is *de novo*. *Wilson v. Rhodes*, 258 S.W.3d 873, 875 (Mo.

App.2008). We use the same criteria the trial court should have used in initially deciding whether to grant defendants' motion. *Harris v. Smith*, 250 S.W.3d 804, 806 (Mo.App.2008). An appellate court exercises great caution in affirming a summary judgment because it is an extreme and drastic remedy that denies the opposing party his day in court. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

As our Supreme Court explained in *ITT*, Rule 74.04 distinguishes between a motion for summary judgment filed by a "claimant" and by a "defending party." *ITT*, 854 S.W.2d at 380. Here, Dollar General was a defending party.

> [A] "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (italics in original).

■ Dollar General's motion for summary judgment was based upon its affirmative defense that Plaintiffs' wrongful death claim was barred by the exclusive remedy provision found in § 287.120.2. Contrary to the requirements of Rule 74.04(c)(1), Dollar General's motion contained no statement of uncontroverted ma-

terial facts.[3] There was, however, a section of the supporting memorandum called *"FACTS"* which listed the following six statements that were supported by citations to the record:

1. On or about August 5, 2009, [Plaintiffs] filed their First Amended Petition alleging in Count V Wrongful Death/Negligence against [Dollar General].

2. [Plaintiffs] allege the wrongful death of their daughter, Kasi LeaAnne Flowers, which occurred August 12, 2006.

3. Plaintiffs' First Amended Petition for Damages specifically states in Paragraph 11 "On or about August 12, 2006, Kasi LeaAnne Flowers was employed by defendant Dollar General."

4. Plaintiffs' First Amended Petition for Damages states specifically in Paragraph 18 "At approximately 6:45 pm, Billy Meadows re-entered the Dollar General store with a rifle and murdered Kasi LeaAnne Flowers. He then committed suicide."

5. At the time of the incident, Kasi LeaAnne Flowers was working in the course and scope of her employment for Separate Defendant Dollar General.

6. Separate Defendant Dollar General filed a First Report of Injury with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation.

As noted above, Dollar General's motion for summary judgment was based upon § 287.120. In relevant part, that statute states:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. *The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.*

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

§ 287.120.1–2 (italics added). Dollar General was not entitled to summary judgment unless it established, via undisputed facts, that Plaintiffs' wrongful death claim against Dollar General was based on an accident arising out of and in the course of Kasi's employment. *See Treaster v. Betts*, 324 S.W.3d 487, 490 (Mo.App.2010); *Fortenberry v. Buck*, 307 S.W.3d 676, 679 (Mo. App.2010).

In Point I, Plaintiffs contend their wrongful death claim against Dollar General is not barred by the exclusive remedy provision in § 287.120.2. Plaintiffs argue that the statements contained in Dollar General's supporting memorandum do not establish that Kasi's death arose out of her employment by Dollar General. Relying on the italicized portion of § 287.120.1,

---

3. The trial court could have denied Dollar General's motion based on this defect alone.

*See State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 908 (Mo.App.2009).

however, Dollar General argues that Kasi's death did arise out of and in the course of her employment because she was the victim of an unprovoked violence or assault while she was at work. For the reasons that follow, we conclude that Dollar General's argument has no merit.

■ The word "accident" in § 287.120 has long been interpreted to include an injury received by an employee because of an assault on him while engaged in the performance of his work. *See Staten v. Long–Turner Constr. Co.*, 185 S.W.2d 375, 379 (Mo.App.1945). For that injury to be compensable, however, the claimant had to prove that the accident arose out of and in the course of his employment. *Id.; see also Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874, 878 (Mo. App.1975). Prior to 1969, assaults on employees were divided into three classes for the purpose of determining compensability:

[class 1]: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which, in either event, are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri....

[class 2]: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri....

[class 3]: Irrational, unexplained or accidental assaults of so-called "neutral" origin, which, although they occur "in the

course of" the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place. In some jurisdictions that circumstance is regarded as a sufficient reason for awarding compensation; but not in Missouri....

*Liebman v. Colonial Baking Co.*, 391 S.W.2d 948, 951 (Mo.App.1965). Thus, only class 1 assaults were compensable.

In 1969, the legislature amended § 287.120.1 by adding the following language to this subsection: "The term 'accident' as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." 1969 Mo. Laws 390; *Freeman v. Callow*, 525 S.W.2d 371, 375 n. 2 (Mo.App.1975).[4]

In *Person v. Scullin Steel Co.*, 523 S.W.2d 801 (Mo. banc 1975), the claimant was assaulted at work by a co-worker. The Commission decided that claimant's injury was not compensable because the assault arose out of a personal matter unconnected with either employee's work duties. *Id.* at 802–03. The claimant argued that the amendment to § 287.120.1 made his injury compensable. After reviewing the history of the assault doctrine in Missouri, our Supreme Court considered the effect of the amendment upon that doctrine:

As indicated by the foregoing, the finding of the commission has placed this assault in the second class, i.e., those committed in the course of private quarrels personal to the participants, which have heretofore been ruled non-compen-

---

4. We note that *Freeman* and several other cases cited herein were overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 224–232 (Mo. banc 2003). Because these cases support other principles of law not affected by the *Hampton* ruling, no further acknowledgment of *Hampton's* effect on these cases will be recited.

sable. The question presented, therefore, is whether the 1969 amendment should be construed as changing the established rule relating to the second class. We rule that question in the negative. In a general way we have considered that a construction in accord with claimant's contention would be contrary to the established rule in most all jurisdictions. More specifically, however, we have the view that it was the intent of the legislature only to change the rule in regard to the third class, i.e., the so-called assaults of "neutral" origin. As stated, this amendment was motivated by the Liebman and Kelley decisions, both of which involved third class or neutral assaults. Under our construction of the amendment the legislative purpose was accomplished. We think it can confidently be said that had the amendment been enacted prior to the Liebman and Kelley cases it would have been ruled in each case that the injury would have been compensable.

*Id.* at 806 (citation omitted). The Supreme Court affirmed the Commission's decision that the claimant's injury was not compensable. *Id.* at 806–07. Because claimant was assaulted at work in the course of a private quarrel that was purely personal to the participants, his injury did not arise out of his employment. *Id.* at 805.

Since *Person* was decided, Missouri appellate decisions have uniformly held that injuries sustained by employees in assaults at work arising from personal quarrels are not compensable. *See, e.g., Freeman*, 525 S.W.2d at 375 n. 2; *Cramer v. The Wash House of Susquehanna, Inc.*, 690 S.W.2d 804, 805 (Mo.App.1985); *Luster v. Industrial Engineering and Equipment Co.*, 747 S.W.2d 228, 229 (Mo.App.1988); *Johnson v. Nanias*, 738 S.W.2d 164, 165 (Mo.App. 1987); *Dillon v. General Motors*, 784 S.W.2d 915, 917 (Mo.App.1990); *Scheper v. Hair Repair, Ltd.*, 825 S.W.2d 1, 3–4 (Mo.

App.1992); *Thompson v. Delmar Gardens of Chesterfield, Inc.*, 885 S.W.2d 780, 782–83 (Mo.App.1994).

For example, the claimant in *Freeman* sustained serious injuries when acid was thrown in his face while he was on duty at the service station where he worked. The attacker believed claimant was interested in, and had been kissing, the attacker's wife. *Freeman*, 525 S.W.2d at 373–74. The Commission decided that the claimant's injury was not compensable. *Id.* at 375. This Court affirmed, holding that claimant's injuries did not arise out of his employment because they resulted from a private quarrel that was purely personal to the participants. *Id.* at 376.

■ Similarly, in *Scheper*, the claimant was involved in a stormy relationship with her boyfriend, Harrison. On one occasion, he had forced his way into Scheper's apartment and choked her. Thereafter, Harrison followed Scheper to work at a beauty salon. He forced his way inside, stabbed Scheper, abducted her and then severely injured her in an automobile collision. *Scheper*, 825 S.W.2d at 2–3. Her worker's compensation claim was denied on the ground that her injuries did not arise out of her employment. *Id.* at 3–4. The eastern district of this Court affirmed that decision because "injuries resulting from assaults committed in the course of private quarrels are not compensable under § 287.120." *Id.* at 3. As the appellate court noted, "[e]vidence that an assailant and his victim knew one another or had prior disputes is a factor indicating the assault arose from a private quarrel." *Id.* at 4.

Finally, in *Thompson*, claimant was leaving work when he was stabbed by co-employee Jackson. The two employees had been involved in a prior altercation some ten months earlier, and Jackson stat-

ed that he stabbed claimant for giving Jackson's girlfriend a ride home. The Commission granted worker's compensation benefits on the ground that claimant was injured in an assault that was personal only to Jackson. The eastern district of this Court reversed the Commission's decision because:

> [E]vidence demonstrating a personal motive for an assault favors its categorization as a noncompensable private quarrel rather than a compensable "neutral" assault. The evidence of the prior dispute and Jackson's statement that he assaulted claimant because claimant gave Jackson's girlfriend a ride home supports the finding by the Commission that the assault was personal to the attacker, and demonstrates a personal motive for the assault. Where an assault is unprovoked and the assailant's actions, although unjustified, are directed toward the victim for purely personal reasons, the assault is properly characterized as a noncompensable assault rather than a "neutral" compensable assault.

*Thompson,* 885 S.W.2d at 782–83 (citation omitted).

In 2005, the legislature made numerous changes to Chapter 287. 2005 Mo. Laws 907–08. We presume the legislature acted with a full awareness and complete knowledge of how the assault doctrine had been applied in *Person* and the other appellate decisions discussed above. *See Lindahl v. State,* 359 S.W.3d 489, 493 (Mo.App.2011). Although other changes were made to § 287.120, the legislature reenacted the language in § 287.120.1 stating that "[t]he term 'accident' as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." 2005 Mo. Laws

913–14. When a familiar rule has received a settled judicial construction from our Supreme Court and the legislature reenacts the same statutory language without change, we presume the legislature knew about and adopted this construction of the statute. *See State v. Ostdiek,* 351 S.W.3d 758, 766 (Mo.App.2011); *Duckworth v. United States Fid. & Guar. Co.,* 452 S.W.2d 280, 286 (Mo.App.1970). We conclude that the legislature intended no changes in the assault doctrine, as it had been announced in *Person* and applied thereafter in judicial decisions preceding the 2005 amendments to Chapter 287.

Thus, Dollar General was not entitled to summary judgment unless it established via undisputed facts that Kasi was killed during a class 1 or class 3 assault. The statements in Dollar General's supporting memorandum failed to do so. Statements 1–4 of that memorandum are legally immaterial to the application of the assault doctrine. The fact that Kasi was killed at work or that Dollar General filed a report of injury does not, *ipso facto,* render the worker's compensation claim compensable. The assault doctrine requires a specific factual analysis of the reason for the assault, which is completely absent from Dollar General's motion or supporting memorandum. Statement 5, which asserts that Kasi was working in the course and scope of her employment at the time of the incident, is a legal conclusion which we must disregard in deciding whether the grant of summary judgment was proper. *See Estate of Cates v. Brown,* 973 S.W.2d 909, 916 (Mo.App.1998); *Xavier v. Bumbarner & Hubbell Anesthesiologists,* 923 S.W.2d 428, 433 (Mo.App.1996).

Our *de novo* review of the undisputed facts, on the other hand, demonstrates that Kasi's death resulted from a class 2 non-

compensable private quarrel.[5] Meadows had assaulted Kasi on the evening of August 11th. During that altercation, Meadows slapped Kasi around and ripped her shirt. When Kasi arrived at work on August 12th, she had a black eye. She was crying and upset. Meadows arrived at the Dollar General store less than two hours after Kasi began working. Meadows kicked open a locked door and attempted to get inside the office to get to Kasi again. Although this second attack was stopped by Payne, Meadows was upset when he left. He returned before Kasi's shift ended and killed her. None of these three attacks by Meadows on Kasi had any relationship at all to her work. As in *Scheper*, the undisputed facts demonstrate that Meadows had a personal motive for these assaults, and Kasi "merely imported her private life to the scene of the assault." *Scheper*, 825 S.W.2d at 4. Although the assaults on Kasi were unprovoked and unjustified, her injuries did not arise out of her employment because the assaults were directed at her for purely personal reasons. *Id.; see Thompson*, 885 S.W.2d at 782–83; *Freeman*, 525 S.W.2d at 375–76.

The trial court erred when it granted summary judgment to Dollar General based upon its § 287.120 affirmative defense because the undisputed facts failed to establish that Kasi's death resulted from an accident that arose out of her employment. *See Treaster v. Betts*, 324 S.W.3d 487, 490 (Mo.App.2010); *Fortenberry*, 307 S.W.3d at 679. Plaintiffs' first point has merit and is granted. Accordingly, the judgment in favor of Dollar General is reversed. Plaintiffs' wrongful death claim against Dollar General is remanded for further proceedings consistent with this opinion.

### Point II

Plaintiffs' second point contends the trial court abused its discretion in denying Plaintiffs' motion for an extension of time to respond to Dollar General's motion for summary judgment. In light of our disposition of Point I, Plaintiffs' second point is moot.

### Point III

■ Plaintiffs' third point involves the denial of their motion to file a response out of time to Gage's motion for summary judgment. The following additional facts are relevant to this point.

Gage filed her motion on March 4, 2011. Plaintiffs' response was due by April 4, 2011. *See* Rule 74.04(c)(2); Rule 44.01(a). No timely response was filed. On April 13, 2011, Plaintiffs filed a motion for an extension of time to respond. The motion stated:

1. Despite due diligence, plaintiffs' counsel has not completed response. Counsel needs an additional thirty days to complete said response.

2. Plaintiffs request for an extension of time is for good cause and not for any improper purpose.

On April 21, 2011, Plaintiffs filed a response to Gage's motion out of time. The response admitted 19 facts in Gage's motion and denied seven facts. The denials were supported with specific references to

---

5. During oral argument, Dollar General's counsel stated that this Court should not consider any facts other than those in its motion. For the reasons stated above, the statements in the motion are legally insufficient to support a judgment in Dollar General's favor. In addition, Dollar General's own brief stated that the facts set out in Plaintiffs' brief were generally accurate and sufficient for purposes of appeal. We will not permit Dollar General to take an inconsistent position first advanced during oral argument. *See Winter v. Winter*, 167 S.W.3d 239, 253 (Mo.App.2005)

the record. Plaintiffs also set out four additional, material facts which were supported by references to the record.

Plaintiffs motion for extension of time was heard by the trial court on April 22, 2011. Plaintiffs' counsel stated that "it's 100 percent my office's fault. My secretary paralegal, who is assigned to this case, had gallbladder surgery on March 1. She was out of the office for three weeks. The temporary person calendared the date wrong." The court asked the parties for briefing on the issue. On May 7, 2011, the trial court entered an order denying Plaintiffs' request for an extension of time because: (1) Plaintiffs' motion provided no reason for the requested extension; and (2) there was no valid factual basis to find excusable neglect.

In Point III, Plaintiffs contend the court abused its discretion in denying Plaintiffs' motion for an extension of time to respond to Gage's motion for summary judgment. Plaintiffs argue that the trial court was required to grant the extension because Plaintiffs presented sufficient evidence of excusable neglect. We disagree.

In relevant part, Rule 44.01(b) states:

**Enlargement.** When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon notice and motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under rules 52.13, 72.01, 73.01, 75.01, 78.04, 81.04 and 81.07 or for commencing civil action.

*Id.* This subpart of the rule applies to a request for an extension of time to file a response to a motion for summary judgment after the time to respond has ex-

pired. *See Crabtree v. Bugby*, 967 S.W.2d 66, 72 (Mo. banc 1998). We review the trial court's ruling for abuse of discretion. *Inman v. St. Paul Fire & Marine Ins. Co.*, 347 S.W.3d 569, 575 (Mo.App.2011). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* If reasonable persons could differ as to the propriety of the trial court's action, there is no abuse of discretion. *Id.* In *Inman*, we defined excusable neglect as:

A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.

*Id.* at 576. There, the motion contained no explanation of the reason for the absence of a timely response, and the record contained no evidence of excusable neglect. *Id.*

The same is true here. Plaintiffs' motion stated that they needed additional time to respond, despite exercising due diligence. The motion alleged no facts to support that assertion. At the hearing on the motion, however, Plaintiffs' counsel admitted that he had not exercised due diligence in preparing a response. He stated that his office was "100 percent" at fault because the response date had been improperly calendared by the lawyer's staff. The trial court concluded that the foregoing facts failed to establish excusable neglect. We find no abuse of discretion in that ruling. *See id.* Point III is denied.

We reverse the judgment in favor of Dollar General and remand that part of the case for further proceedings consistent with this opinion. The judgment in favor of defendant Gage is affirmed.

ROBERT S. BARNEY, J., and WILLIAM W. FRANCIS, P.J., concur.